Rapallo, J.
 

 The instructions to the jury as to the legal effect of the delivery of the wine at Blood’s Station in conformity with the terms of the verbal contract of sale, were clearly erroneous. ISTo act of the vendor alone, in performance of a contract of sale void by the statute of frauds, can give validity to such a contract.
 

 Where a valid contract of sale is made in writing, a delivery pursuant to such contract at the place agreed upon for delivery, or a shipment of the goods in conformity with the terms of the contract, will pass the title to the vendee without any receipt or acceptance of the goods by him. But if the contract is oral, and no part of the price is paid by the vendee, there must be not only a delivery of the goods by the vendor, but a receipt and acceptance of them by the vendee to pass the title or make the vendee liable for the price; and this acceptance must be voluntary and unconditional. Even the receipt of the goods, without an acceptance, is not sufficient. Some act or conduct on the part of the vendee, or his authorized agent, manifesting an intention to accept the goods as a performance of the contract, and to appropriate them, is required to supply the place of a written contract. This distinction seems to have been overlooked in the charge. The learned judge instructed the jury, as a matter of law, that if they were satisfied that the wine or any portion of it was actually delivered in pursuance of the verbal contract, that circumstance was sufficient to take the contract out of the statute of frauds, and the contract was a valid one and might be enforced, notwithstanding it was not in writing. The attention of the jury was directed to the inquiry whether the plaintiffs had faithfully performed their part of the contract, rather than to the action of the defendant, and the judge proceeded to state that if the wine was delivered to the express company at Blood’s Station, in good order, in
 
 *453
 
 merchantable condition, and corresponded in quality and all substantial and material respects with the samples, then he instructed the jury, as a matter of law, that if they found the contract as Gordon testified, with respect to the place of delivery, that was a complete delivery under the contract, and passed the title from the plaintiffs to the defendant, and the plaintiffs were entitled to recover the contract price of the wines.
 

 The plaintiffs’ counsel suggests, in the statement of facts appended to his points, that Gordon was the agent of the defendant, to accept the goods at Blood’s Station. But this statement is not borne out by the evidence; Gordon was the agent of the plaintiffs, for the sale of the goods; it was incumbent upon them to make the shipment. All that Gordon testifies to is, that the defendant requested him to make the best bargain he could for the freight. He does not claim that he had any authority to accept the goods for the defendant.
 

 According to the defendant’s testimony, Gordon clearly had no such authority, nor did the defendant designate any conveyance, and the judge submitted no question to the jury as to the authority either of Gordon or the express company to accept the goods. On the contrary, he repeated that if, when the wine was delivered at Blood’s Station, it was in good order and corresponded with the samples, the plaintiffs would be entitled to a verdict for the contract price, upon the ground that the parties, by the contract, (assuming it to be as claimed by the plaintiffs) fixed upon that station as the place of delivery; “ that it was true that the defendant was not there to receive it, and had no agent at Blood’s Station to receive it, and had no opportunity to inspect it there; but that that was a contingency he had not seen, and which he might have guarded against in the contract.”
 

 It is evident that the learned judge applied to this case the rule, as to delivery, which would be applicable to a valid, written contract of sale, but which is inapplicable when the contract is void by the statute of frauds.
 

 The effect of the delivery of goods at a railway station, to
 
 *454
 
 be forwarded to the vendee in pursuance of the terms of a verbal contract of sale, was very fully discussed in the case of
 
 Norman
 
 v.
 
 Phillips
 
 (14 Meeson & Wellsby, 277), and a verdict for the plaintiff, founded upon such a delivery, and upon the additional fact that the vendor sent an invoice to the vendee, which he retained for several weeks, was set aside. The English authorities on the subject are reviewed in that case, and the American and English authorities bearing upon the same question are also referred to in the late cases of
 
 Rodgers
 
 v.
 
 Phillips
 
 (40 N. Y., 519), and
 
 Cross
 
 v.
 
 O’Donnell
 
 (44 id., 661). The latter case is cited by the counsel for the plaintiffs as an authority for the proposition that a delivery to a designated carrier is sufficient to take the case out of the statute; but it does not so decide. It holds only that the receipt and acceptance need not be simultaneous, but that they may take place at different times, and that, after the purchaser had himself inspected and accepted the goods purchased, the delivery of them by his direction to a designated carrier was a good delivery, and the carrier was the agent of the purchaser to receive them. Ho question, however, arises in the present case as to a delivery to a designated carrier, as the evidence in respect to the agreed mode of delivery is conflicting, and no question of acceptance by the carrier as agent for the defendant, was submitted to the jury.
 

 The judge submitted to the jury two questions, to which he required specific answers:
 

 1st. Was the wine delivered at the railroad station at the time agreed upon by the parties, and was it then in all respects in good order, and like the samples exhibited by the plaintiffs to the defendant ? and,
 

 2d. Was the wine accepted by the defendant after it reached his place of business in Hew York?
 

 The jury answered both of these questions in the affirmative, and it- is now claimed that the answer to the second question renders immaterial any error the judge may have committed in respect to the effect of the delivery at the station.
 

 
 *455
 
 It is difficult to find any evidence justifying the submission to the jury of the second question; but no exception was taken to such submission. The motion for a nonsuit would have raised that point, were it not for the fact that there was evidence to go to the jury on the claim of fifty-two dollars for barrels, and this precluded a nonsuit. We think, however, that the error in the charge may have misled the jury in passing upon the second question; at all events, it is not impossible that it should have done so. Having been instructed that upon the fact as they found it in respect to the agreement for a delivery at Blood’s Station, the title to the goods had passed to the defendant before the receipt of them at Hew York, and that their verdict must be for the plaintiffs, they may have examined the question of his acceptance of them at Hew York with less scrutiny than they would have exercised had they been informed that the result of the case depended upon their finding on that question. And the construction of the defendant’s acts and language may, in some degree, have been influenced by the consideration that when the wine arrived in Hew York the title had, according to the theory on which the case was submitted to them, passed to the defendant, and he had no right to reject the wines. Furthermore, we think the judge erred in excluding the evidence of the contents of the telegram which the defendant attempted to send to the plaintiffs immediately upon the receipt of the wine. If, as was offered to be shown, it stated that he declined to accept the wine, it was material as part of the
 
 res gestee.
 
 A
 
 hona fide
 
 attempt, immediately on the receipt and examination of the wine, to communicate such a message, was an act on his part explaining and qualifying his conduct in receiving the wine into his store and allowing it to remain there. And even though the message never reached the plaintiffs, it bore upon the question of acceptance by the defendant. The objection to the evidence of the contents of the telegram was not placed on the ground of omission to produce the original, and the judge in his charge instructed the jury that the attempt to send this telegram did not affect the plaintiffs’
 
 *456
 
 rights, for the reason that it was not shown to have been received by them, and this was excepted to. In
 
 Norman
 
 v.
 
 Phillfips
 
 (14 Meeson & Wellsby, 277), the defendant was allowed to prove that, on being informed by the railway clerk that the goods were lying for him at the station, he said he would not take them, and stress was laid upon the fact. Tet this statement to the clerk was not communicated to the plaintiff. Evidence of an attempt to send a message to them to the same effect, though unsuccessful, would have been no more objectionable than the declaration to the clerk. The acts of the defendant at the time of the receipt of the goods, and his
 
 bona fide
 
 attempt to communicate to the plaintiffs his rejection of them, were, I think, material and competent to rebut any presumption of an acceptance arising from their retention by him.
 

 The judge was requested to instruct the jury that the true meaning of the defendant’s letter of March thirty-first was a refusal to accept the wine under the contract. A careful examination of that letter satisfies us that the defendant was entitled to have the jury thus instructed. The letter clearly shows that the defendant' did not accept or appropriate the wines. After complaining in strong language of their quality and condition, and of the time and manner of then-shipment, he says to the plaintiffs, “what can be done now with the wine after it suffered so much, and shows itself of such a poor quality ? I don’t know, myself, and am awaiting your advice and opinion.” He concludes by expressing his regret that their first direct transaction should have turned out so unsatisfactory, and by stating that he cannot be the sufferer by it, and he awaits their disposition.
 

 This language clearly indicates an intention to throw upon the plaintiffs the responsibility of directing what should be done with the wine, and is inconsistent with any acceptance or appropriation of it by the writer.
 

 
 *457
 
 For these reasons the judgment should be reversed, and a new trial granted with costs to abide the event.
 

 All concur.
 

 Judgment reversed.