C. HART SMITH and others, Respondents, *v.* ELIAS T. MILLIKEN and others, Appellants.

(GENERAL TERM, FIRST DEPARTMENT, 1872.)

A delivery made, under an unwritten contract for sale of goods in value over fifty dollars, to one of several joint purchasers and acceptance by him, renders the contract valid as to all.

The contract provided for payment by note, payable in sixty days. *Held,* that by a delivery of the goods without receipt of the note the terms of the contract were not changed, and that the vendor on demand of the notes and a refusal could maintain an action for immediate payment.

THIS action was brought to recover for breach of defendants' agreement to give their note or draft due in sixty days on a joint purchase of 294 barrels of oil, claimed to have been sold to them by the plaintiffs on the 21st January, 1869, for the sum of $6,096.96, and to have been delivered to them on that day.

The complaint set forth the sale and delivery and agreement on the part of defendants, and alleged a demand of the note or draft by plaintiffs of defendants pursuant to the agreement, and defendants' refusal to deliver the same, and claimed that the above amount, being the price agreed upon for said oil, became due upon such refusal.

The answer denied the sale to the defendants by plaintiffs, and claimed that the sale and delivery was by Chambers Brothers to the defendant, Parsons.

The testimony on the part of the plaintiffs, given on the trial, which was by jury, showed the following state of facts:

Smith *v.* Milliken.

Prior to- the 20th of January the plaintiffs had sent from Baltimore, as a sample, five barrels of this oil, three of which were received by the firm of Chambers Brothers, doing business as brokers and commission merchants in the city of New York.

The brokers sampled the oil, and offered it for sale by the sample on the 20th of January. On the morning of that day the plaintiff Smith arrived in New York, bringing with him a bill of lading for 289 barrels, the remainder of the lot of oil, which had been shipped at Baltimore for New York on the day before, and made his head-quarters at the office of Chambers Brothers, the brokers. Negotiations for the sale of the oil to the defendants were entered into on the 20th, and on the 21st the defendants made an offer for the oil, which was reported to Mr. Smith by the brokers, and was accepted by him, and notice of that acceptance immediately given to the defendants. The terms of sale were a joint purchase by the defendants, with a note or draft at sixty days, to be made by one of the defendants, and indorsed or accepted by the others.

Afterward, and on the 23d of January, the five barrels previously shipped were delivered to Parsons, one of the defendants. Late in the afternoon of the 23d, the 289 barrels not yet having arrived from Baltimore, Mr. Smith, who had retained possession of the bill of lading of the oil since his arrival in New York, indorsed the bill of lading and delivered it to the brokers, or gave the brokers an order on the Transportation Company for the oil, so as to enable them to deliver the oil to the purchasers upon its arrival, and Mr. Smith left for Boston on the evening train at eight o'clock.

The oil arrived on the morning of the 25th, and notice thereof was immediately given to the defendant Parsons, one of the purchasers, who ordered it gauged, and who inspected it, and, at about five o'clock that afternoon, shipped the entire lot to Boston by steamer.

Down to this time and afterward, no bill of lading

or order of the plaintiffs, or any other documentary title whatever was ever exhibited to the defendants, showing that Chambers Brothers held or had possession of the oil; nor did Chambers Brothers themselves hold such documentary evidence, nor any evidence of title, except the order given them by Mr. Smith, just as he was leaving for Boston, to enable them to deliver the oil to the defendants.

When the brokers called upon the defendants to settle for the oil on the 27th of January, the defendants tendered to the brokers in payment two protested notes made by one Coplan, and on which Chambers Brothers were the indorsers, and claimed they had the right to set off those notes against the oil. A demand was made on the defendants for the note or draft which they had promised to give for the oil, which was refused. The defendants knew that Chambers Brothers' business was that of brokers and commission merchants, and that the oil was not in their possession at the time of the contract.

The answer did not set up the holding of the notes by the defendants, nor did it claim the right to set off those notes. On the trial the court, on the application of the defendants' counsel, refused to permit an amendment of the answer of the defendant Parsons, so as to set up the notes as a counter-claim, and held that, "upon the facts as they stand proven, the defendants had no right to offset this claim upon Chambers Brothers against the claim of the plaintiffs Smith, Page & Co."

The trial was by jury, who found a general verdict for the plaintiffs for the amount claimed by the complaint; and from the judgment entered on the verdict and order denying a new trial this appeal was made.

*F. C. Nye*, for the appellants.

*R. H. Huntley*, for the respondents.

Present—INGRAHAM, P. J., and DAVIS, J.

INGRAHAM, P. J.  Admitting that the contract for the sale of the oil, when made, was within the statute of frauds, still the facts submitted to the jury and found by them dispose of that question.  The question was submitted to them whether this was a joint purchase for the benefit of Milliken & Co., and Parsons; and if it was delivered on the joint purchase, a receipt by one of the purchasers inured to the benefit of all, and made the contract valid.

The verdict found such to be the fact, and we see no error on this point, either in the charge of the court or the finding of the jury.  The evidence fully warranted such finding, and the instruction that receipt of part by Parsons was a delivery to all, was not erroneous.  There is nothing in *Caulkins* v. *Hellman* (47 N. Y., 449) that conflicts with these views.  In that case the merchandise was delivered at a railway station; and it was held that it must also appear that it was accepted by the purchaser.  No such distinction can be made where the delivery and acceptance were cotemporaneous acts.  The delivery personally to one of the parties was a personal acceptance by that party, and all became bound thereby. The delivery unconditionally of the oil did not change the terms of the contract so as to relieve the defendants from the mode of payment specified at the time of purchase.  The only effect of such a delivery was to waive any right to receive payment as a preliminary to passing the title to the property, if the defendants sold it before making payment to a *bona fide* purchaser.  The plaintiffs still had a right to demand the notes, and, in case of refusal, to claim immediate payment.  It did not separate the giving of the note from the credit to be allowed if the note was given, so as to deprive the plaintiff of the former and leave him bound by the latter. The giving of the note and the credit were but one act, and could not be separated by any such act.

The question as to the time of delivery of the four barrels was a question of fact for the jury, in passing upon the question whether the sale was on joint account, with which we cannot interfere.  It was not a matter of right to have the

answer amended; and the refusal to allow such amendment was an exercise of discretion on his part with which the court will not interfere.

We see no error in the charge calling for a new trial. The claim to set off the notes indorsed by Chambers Brothers was properly disposed of. It appears that the whole defence was based on an attempt to get possession of the property, and to pay for it in those notes.

There was nothing to warrant such a defence, and no error in the court refusing to charge on that point as requested by t e defendants.

Judgment should be affirmed.