EDWARD HILL, APPELLANT, *v.* FREDERICK HELLER AND HENRY MERZ, JR., RESPONDENTS.

*Contract of sale — when a delivery of all the goods is a condition precedent to an action for the price — what acts of the vendee do not estop him from insisting upon a full performance — Statute of frauds.*

The plaintiff and defendants entered into a contract, whereby the latter agreed to puchase of the former 100 tons of refined alkali, to be shipped to the city of New York by a late January sailing ship, and to be laid on the dock in said city, and to pay therefor one and ninety-five hundreth cents per pound on the first of the following August. In April, 1878, a ship arrived with this quantity of alkali, which was contained in ninety-two casks, thirty-five of them however had been so damaged by water that the defendants were not required to accept them. The defendants offered to accept the remaining fifty-seven casks if the plaintiff would allow them to take the casks to their works, open them and examine their contents. This the plaintiff refused to do.

In an action brought by the plaintiff to recover the difference between the contract price of the alkali and the price at which he had sold it after the defendants' refusal to accept it:

*Held*, that the defendants, by offering to accept the fifty-seven casks, if allowed an opportunity to examine them, had not waived their right to insist that the failure of the plaintiff to tender the whole amount of alkali required by the contract prevented him from maintaining this action.

*Semble*, that as the contract appears not to have been reduced to writing, and as nothing was paid under it, that it was void under the statute of frauds.

APPEAL from a judgment, recovered on the dismissal of the plaintiff's complaint at the circuit.

*John Notman*, for the appellant.

*Henry J. Schenck*, for the respondents.

DANIELS, J.:

The claim made by the plaintiff was for the recovery of the sum of $209.72, with interest, for the difference between the price of

fifty-seven casks of alkali, under a contract for its sale made with the defendants, and the amount realized by him upon the sale, after their refusal to receive the property. They had entered into a contract with him for the purchase of 100 tons of refined alkali of the brand of the Jarrow Chemical Company, to be shipped to the city of New York by a late January sailing ship, and to be laid on the dock in said city, for which the defendant promised and agreed to pay the price of one and ninety-five. one-hundredths cents, gold coin of the United States, for each and every pound thereof, on the 1st of August, 1878. This is the statement of the terms of the contract contained in the complaint, and they are not materially changed by anything contained in the answer, or by the evidence given upon the trial.

The construction which the law places upon such an agreement is that the purchasers are entitled to require a complete tender or delivery of all the property mentioned in it, to subject them to the obligations of receiving it. The contract, in other words, is for one entire subject-matter, which the defendants are entitled to insist upon receiving in accordance with the terms agreed upon. By this contract but one shipment was either contemplated or provided for, and that was by a late January sailing ship, and all the property was to be laid upon the dock on the arrival of this ship.

After the making of this agreement, and in April, 1878, a ship did arrive with this quality of alkali, laden on board as a portion of her cargo, but it did not exceed in quantity ninety-two casks, and thirty-five of those had been so damaged by water that the defendants were not required to receive them.

The other fifty-seven casks, containing about 69,326 pounds of the alkali, were stated to be in good condition, and were offered to the defendants by way of part performance of the contract. They, however, declined to receive them, for the reason assigned by them that these fifty-seven casks, as well as the remainder of the shipment, had been injured by the water. They then proposed to the plaintiff to take the casks upon their lighters to their own works, located in Newark, where they were to be opened and the good selected from the bad, under the inspection of the plaintiff's own man, and that the defendant would then return what was damaged and keep what was good.

The plaintiff would not consent to this transfer of the property but insisted that it should be examined at the dock in the city of New York, where it had been placed from the ship, and to that proposal the defendants refused to acceed. The result was that they did not take any portion of this shipment of alkali, and the fifty-seven casks were thereupon placed in the hands of an auctioneer who sold them, in the ordinary course of such sales, resulting in a loss under the contract-price amounting to the sum claimed in this action.

It has been urged in support of the plaintiff's right to recover this difference that as the defendants placed their refusal to receive the fifty-seven casks upon the ground that the alkali had all been injured, that they thereby dispensed with a full performance of the contract on the part of the plaintiff. But the mere unfounded objection to the quality or condition of the alkali contained in these casks would not be sufficient to produce such a result. The case in this respect differs from those upon which reliance has been placed in support of the appeal, for in neither has it been held that the refusal to accept a part of the property required by the terms of the agreement to be delivered, because of an unfounded objection to such part, would entitle the party offering such partial performance to the right to insist upon the property being received if the objection taken to it could be shown to be without foundation. In all the cases where this rule has been applied, a defective offer to perform the entire stipulation relating to the proposed subject-matter was made by the party. (*Everett* v. *Coffin,* 6 Wend., 604–608; *Underwood* v. *Farmers, etc., Ins. Co.,* 57 N. Y., 500–505; *Gerrish* v. *Norris,* 9 Cush., 167.)

The quantity offered in this case to the defendants was not of that nature but it was a part only of the entire subject, all of which they were entitled to receive under the terms of the agreement. And it required more than a mere objection on their part, which might be shown to be unfounded in fact, to obligate them to receive a part instead of the whole of the property. If the entire 100 tons had been offered and they had objected to it as injured, when in fact that was not the case, the defendants would have been bound to answer for the consequences of their refusal to receive it. But where only a part is included in the offer, upon a contract

entitling the other party to a delivery of the entire subject-matter, there such an objection cannot be attended with that result. The defendants had not bound themselves by their agreement to receive a part of the alkali, and they could not be deprived of their right to insist upon a delivery of all without their assent. And they at no time agreed to receive these fifty-seven casks, but in effect refused to do so, unless they should first be sent to their works for examination and separation. There was no acceptance, inasmuch as the plaintiff declined to assent to this proposal, of any part of this property. And for that reason the loss resulting from the auction sale afterward made of it could not legally be imposed upon the defendants.

The rule upon this subject is, that "when a plaintiff seeks to enforce a contract by an action, he is not entitled to recover, where its true interpretation depends upon the condition of performance by him, unless performance is shown, or unless actual waiver is proved." (*People's Bank* v. *Mitchell*, 73 N. Y., 406–413, 414.) The least that has been held to create a waiver of this nature, is the acceptance and receipt of some portion of the entire subject of the contract, by the purchaser. That was the fact in *Matthews* v. *Hobby* (48 Barb., 167), for there the defendant actually received a part of the property.

The same fact was shown in *Perlee* v. *Beebe* (13 Hun, 89), and *Avery* v. *Willson* (81 N. Y., 341). And because of the acceptance and receipt by the purchaser of such part of the property, when by the terms of the agreement he was entitled to insist upon the delivery of all at the same time, it was held that he had so far deprived himself of the right to insist upon the performance of the condition on which the agreement depended. And after having done so he could not resist a claim made for the value of the property received by him by way of part performance of the agreement. The plaintiff's case falls far short of the essential circumstance upon which these decisions were made to depend, for there was a refusal by the defendants to receive the portion of the property offered to them under this contract.

They were not bound to receive it, and the fact that they assigned an incorrect reason for their refusal, as long as they did in fact refuse, would not deprive them of the right to insist upon a com-

plete and entire performance of the contract before any right to compensation, or of action whatever, could accrue to the plaintiff. This they did do in effect, for they refused, under the circumstances, to receive the fifty-seven casks of alkali which the plaintiff proposed to deliver. And from such a refusal no waiver of any of their rights, under the agreement, could possibly be deduced.

By the evidence obtained from the plaintiff's salesman, the contract appeared to have been unwritten. No sum appears to have been paid upon it, and nothing was in fact payable, according to its terms, until the following month of August. And no part of the property mentioned in the agreement had been delivered under it up to and including the time when this controversy arose. And under these circumstances it would seem to be void by the terms of the statute of frauds; and if that was its character, then the rule was stringent requiring the acceptance of some part of the property intended to be sold by the defendants before the contract would become binding upon them. (*Swift* v. *Opdyke*, 43 Barb., 274; *Caulkins* v. *Hellman*, 47 N. Y., 449.)

The custom, concerning which proof was given, in no manner enlarged the plaintiff's rights, for the contract itself was clear and distinct in its terms, and could not be varied by proof of a custom. In addition to that it was not shown that the custom was known to the defendants, and by the testimony of one of them, who was the active party in this transaction, it was made to appear that he never had any knowledge of such a custom as that which was mentioned by other witnesses in the case. In no view was any right of action made out in favor of the plaintiff. The circumstance that another part of the property was, in the following month of May, received and paid for by the defendants, can have no effect whatever upon what had previously transpired, out of which the present claim of the plaintiff had arisen. The complaint was properly dismissed, and the judgment in the case should be affirmed.

BRADY, P. J., concurred.

Present — BRADY, P. J., and DANIELS, J.

Judgment affirmed.