ALFRED B. TAYLOR *vs.* JOHN B. MUELLER and another.

March 29, 1883.

**Sale by Sample—Acceptance—Statute of Frauds.**—Evidence considered, and *held* insufficient to show an unconditional acceptance of grain sold by sample, before its delivery at the place agreed on, so as to preclude the buyers from rejecting it on discovering it to be inferior to sample.

**Same—Acts Necessary to Constitute Acceptance.**—To constitute a binding acceptance, under a contract otherwise invalid by the statute of frauds, there must be some unequivocal act or conduct on the part of the buyer, manifesting an intention to accept and appropriate the goods as owner.

**Usage, as affecting Construction of Contract.**—A special or particular usage at a particular place, to affect the construction of a contract, should appear to have been established, and presumptively or in fact known, when the contract was made.

**New Trial—Newly-Discovered Evidence.**—Where it appeared on a motion for a new trial, made on the ground of after-discovered evidence, that the person by whom the proposed evidence is expected to be given was a witness on the former trial for the moving party, but was not examined in relation thereto because the attorney calling him was unwilling to risk his answers in consequence of outside statements made to him by the witness, who he knew was so connected with the transaction as to be probably familiar with the facts, *held*, that the motion was properly denied.

Appeal by plaintiff from an order of the district court for Hennepin county, *Young*, J., presiding, refusing a new trial. The action was brought by plaintiff to recover the purchase price of barley alleged to have been sold and delivered to defendants. The case is stated in the opinion.

*J. C. Haynes*, for appellant, that the facts of this case show an unqualified receipt and acceptance, cited *Phillips* v. *Ocmulgee Mills*, 55 Ga. 633; *Denny* v. *Williams*, 5 Allen, 1; *Howard* v. *Borden*, 13 Allen, 299; *Townsend* v. *Hargraves*, 118 Mass. 325; *Remick* v. *Sandford*, 120 Mass. 309, 316; *Brownlee* v. *Bolton*, 44 Mich. 218; *Knoblauch* v. *Kronschnabel*, 18 Minn. 272, (300;) *Shepherd* v. *Pressey*, 32 N. H. 49;

*Sands* v. *Taylor*, 5 John. 395; *Vincent* v. *Germond*, 11 John. 283; *Baker* v. *Cuyler*, 12 Barb. 667; *Pease* v. *Copp*, 67 Barb. 132, 142; *Stafford* v. *Pooler*, Id. 143; *Leonard* v. *Fowler*, 44 N. Y. 289; *Cont. Nat. Bank* v. *Nat. Bank of Commonwealth*, 50 N. Y. 575; *Spencer* v. *Hale*, 30 Vt. 314; *Locke* v. *Williamson*, 40 Wis. 377; *Fletcher* v. *Ingram*, 46 Wis. 191; *Phillips* v. *Bistolli*, 2 B. & C. 511; *Bailey* v. *Sweeting*, 9 C. B. (N. S.) 843; *Curtis* v. *Pugh*, 10 Q. B. 111; *Morton* v. *Tibbett*, 15 Q. B. 428; *Hunt* v. *Hecht*, 20 Eng. Law & Eq. 524; *Leather Cloth Co.* v. *Hieronimus*, L. R. 10 Q. B. 140; *Wilkinson* v. *Evans*, L. R. 1 C. P. 407; *Carr* v. *London & N. W. R. Co.*, L. R. 10 C. P. 307; 12 Cent. Law Jour. 32; Benjamin on Sales, §§ 140, 145, 147, 149–153; Browne on Stat. of Frauds, (4th Ed.) §§ 138e, 316, 321, 328–330, 336a; Story on Sales, §§ 405–408, 418.

*Wilson & Lawrence*, for respondents.

VANDERBURGH, J. In May, 1881, the parties entered into a verbal agreement of sale by sample of two car-loads of barley, which plaintiff undertook to sell and deliver to defendants. The grain had been previously consigned to plaintiff, and was in cars at the time, and was deposited by him in an elevator in his own name and on his own account. The parties all resided in the city of Minneapolis, and the defendants, who were brewers, were in the habit of purchasing and receiving large quantities of barley from the plaintiff on the railway track upon Second street, in the city, near their brewery, whence they took it in wagons. This track was connected with the elevator for transfer and delivery of grain. The barley remained in the elevator till the latter part of July, when the defendants requested that it be sent down to Second street, where they claimed it was to be delivered. Thereafter a delivery order was furnished to the manager of the elevator, through defendants, and the cars were accordingly sent down to Second street, where defendants examined the grain and found it inferior to the sample, and unfit for their use, and they thereupon promptly rejected it and notified plaintiff of the fact. It does not appear that the defendants had anything to do with the selection or employment of the carrier or cars in which the delivery was made, or had any control over or responsibility therefor.

The issue tried and submitted to the jury to pass upon was whether

the grain was, by the contract, to be delivered at the elevator or on Second street. The plaintiff's evidence tended to show that it was agreed that the grain should be delivered at the elevator at the time he stored it there, and he insists that the sale was then completed, and his part of the contract performed; while the evidence on defendants' behalf tended to prove that the barley was to be delivered to them on Second street, where, if accepted, it might be taken conveniently to the brewery. They had not seen the grain, nor does it appear that they had any notice of its inferior condition till they examined it at the latter place. The issue as to the place agreed on for the delivery was sharply defined by the court in its charge to the jury, and they must have found thereon in favor of the defendants. From the facts attending the transfer of the barley from the elevator to Second street, the plaintiff contends that there was evidence of an acceptance and receipt of the grain at the elevator, and that the court erred in refusing the instruction to that effect asked by him.

Whether there was sufficient evidence of such acceptance as to warrant or support a verdict in plaintiff's favor, is the principal question for our consideration. Defendants had a short time previously ordered and received at Second street two other car-loads of barley, bought in the same way. The evidence relied on as tending to prove such acceptance appears in the testimony of the manager of the elevator, a witness in plaintiff's behalf, and is as follows: "The circumstances under which I shipped the last two cars are as follows: The defendants ordered it by telephone, same as before, and gave me the numbers of the cars. I told them I had no order to deliver the grain to them; that I had already delivered them two cars, and that I must insist upon having a written order before delivering any more; and they got me one; that is the order upon which I sent out the last two cars, and which gave me authority to send them all out; 2,460 was one of the cars for which I had no order. So I got this order for all of them. * * * They were ordered to Second street. There is where they get at them with teams." The order was a direction to the manager to deliver to defendants the two cars previously ordered and sent, and the two cars then delivered and referred to by the witness. Except as above, and save as to previous requests by defend-

ants of plaintiff to send the barley down to Second street, where they insisted upon having it delivered, there is no evidence of an acceptance by defendants. The evidence shows that the barley was examined by defendants the next morning after it was ordered from the elevator.

Delivery according to the terms of a written contract passes the title, but delivery under a contract invalid by the statute of frauds is at the vendor's risk. No act of the vendor alone is sufficient. *Stone* v. *Browning*, 68 N. Y. 598. While the grain remained in the elevator, in the name of the plaintiff, there had been neither delivery nor acceptance. The mere issuance of the delivery order did not constitute an actual delivery of the grain. It was merely a written authority to receive the possession. *Tanner* v. *Scovell*, 14 Mees. & W. 28; Benjamin on Sales, (3rd Am. Ed.) §§ 776, 806, 815. The manager requested the order to cover past deliveries and this also, and it was accordingly issued. It would hardly be claimed that the defendants were precluded from rejecting the former two car-loads at Second street, if found inferior to sample. Nor would it be reasonable, under the circumstances, to construe their omission to examine this grain at the elevator into a waiver or conclusive acceptance. Defendants might have gone and inspected the grain before it was put in the elevator. Doubtless they might have examined it in the elevator also; but, manifestly, if, as the jury have found, it was to be delivered at Second street, this was not contemplated by the parties in making the contract for the delivery of grain at that place to correspond with the sample.

Dealing with the property as owner, as by a sale, pledge, or otherwise, or detention of the property, or its control beyond a reasonable time for inspection and rejection, is evidence of an acceptance. This is not, we think, shown to be the case here, upon a fair construction of the evidence. A constructive receipt by the carrier at the elevator, upon plaintiff's order, though upon defendants' request to send it to Second street, followed, as it was, by a seasonable inspection and rejection, because not equal to the sample, falls short of an acceptance. *Caulkins* v. *Hellman*, 47 N. Y. 449, 455; *Knight* v. *Mann*, 120 Mass. 219. To constitute an acceptance, within the meaning of

the statute, there must have been some act on the part of the defendants showing their intention to accept and appropriate the grain unconditionally as owners. *Simpson* v. *Krumdick*, 28 Minn. 352, 355; *Stone* v. *Browning, supra*; 5 Wait, Act. & Def. 579. Now, in this case, whether it be claimed that the manager of the elevator delivered the grain to the defendants, through the carrier, at Second street, —and he says "the order was his authority for sending the cars out," —or that he delivered it to the carrier for the defendants, in either case the defendants had not so far received the actual possession of the grain as to constitute an acceptance of the goods as satisfying the contract. Blackburn on Sales, 22–3. It is well settled that delivery to a carrier, not selected or designated by the buyer, does not constitute an acceptance within the statute. *Caulkins* v. *Hellman*, 47 N. Y. 449, 454. If the buyer do not accept in person, he must do so through an authorized agent. *Allard* v. *Greasert*, 61 N. Y. 1, 6. Nor is it material that the buyer has agreed or directed that it should be sent by carrier. *Norman* v. *Phillips*, 14 Mees. & W. 277; *Frostburg Mining Co.* v. *N. E. Glass Co.*, 9 Cush. 115, 120; *Johnson* v. *Cuttle*, 105 Mass. 447. As they did not order or control the cars, and did not remove or disturb the grain, it was sufficient to give notice of their refusal to accept it, leaving it in the custody of the carrier on the transfer track. *Grimoldby* v. *Wells*, L. R. 10 C. P. 391; *Caulkins* v. *Hellman*, 47 N. Y. 449, 455, 456. The distinction between a mere delivery or receipt, and an acceptance, is not to be lost sight of; and where the goods are sold by sample, that fact must be considered as an element in the case in determining whether the buyer has taken actual or constructive possession as owner, so as to indicate an acceptance thereby; and the burden of proof rests on the vendor to show the intent on the buyer's part to take possession as owner. *Remick* v. *Sandford*, 120 Mass. 309, 316.

If the plaintiff intended to deliver the grain at the elevator, it is manifest the defendants did not intend to accept and receive it there. And as soon as they discovered that he had not delivered what they had agreed to buy, they refused to accept it. There was no understanding that the barley was to be inspected at the elevator. Considering the manifest understanding of the defendants as to the

proper place of delivery and the usual course of dealing between the parties, it was not unreasonable for them to request, nor for the plaintiff to send these cars in the usual way out on a transfer track in the same city. They had a right to rely, as they unquestionably did, upon plaintiff's agreement that the bulk would correspond with the sample. No complaint is made of defendants' laches in not promptly rejecting and notifying the plaintiff after they discovered the condition of the grain. Ordinarily, it is considered a question for the jury whether the acts or conduct of the buyer amount to an acceptance. But where the undisputed facts are insufficient, as in this case, to warrant such a finding, the question should not be submitted to the jury. *Stone* v. *Browning*, 68 N. Y. 598, 601–2; *Ham* v. *Van Orden*, 4 Hun, 709; *Shepherd* v. *Pressey*, 32 N. H. 49, 56–7. Here, we think, the defendants, in good faith, were seeking a delivery of the grain purchased by them, and their act in procuring the delivery order, under the circumstances, in ignorance of its condition, had reference solely to its delivery, and was not a decisive and unequivocal act of acceptance thereof as owner. 5 Wait, Act. & Def. 598, and cases cited. In *Morton* v. *Tibbett*, 15 Q. B. 428, relied on by plaintiff's counsel, the defendant himself sent a carrier for the grain purchased by sample, and previous to its arrival resold it by the same sample, before he had inspected it; and it was held that its receipt by the carrier was not an acceptance, but that his resale of it was evidence of an acceptance. *Frostburg Mining Co.* v. *N. E. Glass Co.*, 9 Cush. 115, 120; *Johnson* v. *Cuttle, supra.*

2. The fact that the barley in one of the cars previously delivered was mixed in the same bin with the barley in question, did not take the case out of the statute. The defendants do not appear to have been advised of the fact. The sales were separate, and the first car-load was weighed out from the bulk in the bin, leaving the balance in the custody of the plaintiff, and was not intended to be a delivery and acceptance of anything more than the car sent. The defendants were not, therefore, precluded thereby. Benjamin on Sales, (3rd Am. Ed.) § 806; *Simpson* v. *Krumdick*, 28 Minn. 352, 354.

3. The offer to prove a special custom at a particular elevator, or a special or particular usage in relation to purchase of grain in cars

in Minneapolis, was properly rejected. The contract for the grain was made a year before the trial. There was nothing to show how long previous to the trial, or when, such special usage had been established and operative, as affecting grain contracts; or that it was so well established, general, and uniform, as respects the particular trade or business, that the law would presume knowledge of it. The inquiry was as to the present existence of a special custom with reference to grain sent to a particular elevator, which had been but recently built when this contract was made, and purchases by sample by parties buying grain on the track. *Janney* v. *Boyd, ante,* p. 319; *Walls* v. *Bailey,* 49 N. Y. 464; *Collins* v. *N. E. Iron Co.,* 115 Mass. 23; Lawson on Usages, § 18.

4. A new trial was also asked on the ground of newly-discovered evidence. A witness on the part of the plaintiff was not interrogated in respect to a matter deemed material by plaintiff's attorney at the time, though fully advised that the facts, if existing, would be likely to be within the knowledge of the witness, for the reason that he was afraid to risk his answers. The attorney had previously consulted the witness, and was misled by him, as his affidavit states, in reference to the truth of the matter. Notwithstanding these outside statements of the witness, he was so connected with the transaction that we think it was laches on the part of the plaintiff not to have examined him on the subject, if he desired to elicit the whole truth, under the sanction of an oath; and, if he dare not trust him then, the court can hardly relieve him from an error of judgment in order to allow him to experiment with a witness already shown to be unreliable, and whose testimony, so far as appears, will be wholly uncorroborated. *Elliott* v. *Pinkus,* 55 Ga. 163; *Archer* v. *Heidt,* Id. 200; *Fleming* v. *Hollenback,* 7 Barb. 271, 278.

Order affirmed.