PORTER MANUFACTURING COMPANY(LIMITED), RESPOND-
ENT *v.* HIRAM K. EDWARDS, AS SHERIFF, ETC., APPELLANT.

*Executory contract for the manufacture and sale of personal property — when the
title does not pass until the property has been accepted by the vendee.*

In the fall of 1880 the plaintiff, a domestic corporation located at Syracuse,
entered into a verbal agreement with a foreign corporation, located at Still-
water, Minnesota, by which it agreed to manufacture and deliver on board
the cars at Syracuse, before May 1, 1881, a large number of steam boilers of
specified kinds, at specified prices, which were to be paid for as provided by
the agreement. Prior to May 1, 1881, and also between that date and July
eighth, the plaintiff had manufactured and shipped a number, but not all of the
said boilers, and the same had been received by the vendee. July 18, 1881, the
plaintiff loaded six of said boilers upon a car at Syracuse, directed to the vendee,
and on the same day mailed an invoice and a bill of lading to it. Each boiler
was marked with a stencil plate with the name of the vendee. After the car
had been locked, and on July nineteen, the boilers were seized by the sheriff,
under an attachment, as the property of the foreign corporation. The plaintiff
being notified of this fact, telegraphed to the vendee, whereupon, the latter
telegraphed to the plaintiff that it would not accept the boilers, because not
delivered before May first. In an action of replevin brought by the plaintiff
against the sheriff:

*Held,* that a finding of the referee that the title to the boilers had not passed to
the vendee at the time of the attachment would not be reversed.

APPEAL from a judgment, entered upon the report of a referee,
awarding the possession of the property described in the com-
plaint to the plaintiff, and six cents damages and costs.

In the fall of 1880 the plaintiff, a domestic corporation, located
and doing business at Syracuse, New York, and Seymour, Sabin &
Co., a foreign corporation, located and doing business at Stillwater,
Minnesota, entered into a verbal contract, by the terms of which the
plaintiffs agreed to manufacture for Seymour, Sabin & Co., a large
number of steam boilers of specified kinds, and at specified prices,
the same to be delivered on board the cars at Syracuse, New York,
free of charges, by the 1st day of May, 1881; the same to be paid
for by said Seymour, Sabin & Co., in six, nine, twelve, fifteen and
eighteen months, with interest; payments or notes to be due at the
date of each shipment, or at an average date to be arrived at.

The plaintiffs delivered thirteen of said boilers on the 26th day
of March, 1881, but failed to deliver any more under said contract

prior to the said first day of May, but from time to time between the said first day of May and the 8th day of July, 1881, they did deliver on board the cars of the New York Central and Hudson River Railroad, at Syracuse, New York, fifty-seven more of said boilers, all of which were received by said Seymour, Sabin & Co.

The plaintiffs, on the 18th day of July, 1881, loaded on board a car of the said New York Central and Hudson River Railroad, the six steam boilers for which this action is brought to recover possession — being the last of the said boilers agreed to be manufactured and shipped under said contract.

On each of the said boilers so shipped the plaintiff caused to be marked with stencil plate, " Seymour, Sabin & Co., Stillwater, Minnesota," and with the said boilers the plaintiffs delivered a shipping bill thereof to the said railroad company, whereby the same were shipped to Seymour, Sabin & Co., and on the same day the plaintiffs mailed an invoice and bill of lading of the said boilers to said Seymour, Sabin & Co., at Stillwater, Minnesota.

After the boilers had been loaded on the freight car, the car locked and made up in a freight train, ready to depart to the west, and on the 19th day of July, 1881, the defendant Hiram K. Edwards, as sheriff of the county of Onondaga, attached and took possession of the same under and by virtue of an attachment theretofore issued to and held by him in an action which had been commenced in the Supreme Court of the State of New York by B. W. Payne & Sons, as plaintiffs, and Seymour, Sabin & Co., as defendants therein.

The plaintiffs were immediately notified of such attachment, and thereupon by telegram informed Seymour, Sabin & Co. thereof, who by telegram thereupon notified the plaintiffs that, as by their contract the boilers were to be delivered in May, they would not then receive them at that late day on that contract.

The plaintiffs, on receipt of said telegram from Seymour, Sabin & Co., commenced this action against the defendant, as sheriff of Onondaga county, to recover the possession of the said boilers, retook the same, reshipped them to George A. Porter, their general manager at Chicago, Illinois, and the plaintiffs thereupon, through said Porter, sold and delivered the same to said Seymour, Sabin & Co., under a new agreement.

*Brown & Hadden,* for the appellant.

*Waters, McLennan & Dillaye,* for the respondent.

HARDIN, J.:

This action involves the question as to who was the owner of six steam boilers at the time they were attached by the defendant as sheriff, in virtue of an attachment issued out of this court against a foreign corporation known as "Seymour, Sabin & Co., Stillwater, Min." The boilers were made by plaintiff, and put on board cars of the New York Central and Hudson River Railroad Company, at Syracuse, on the 18th of July, 1881, and the attachment was levied July 19, 1881, after the property was locked up in the cars ready to depart for the west, under the arrangement between the plaintiff and the corporation. The property was to be manufactured and shipped by May, 1881. Plaintiff caused each of the boilers so shipped to be marked with stencil plate, "Seymour, Sabin & Co., Stillwater, Min.," and with the boilers the plaintiff delivered shipping bills to the railroad, and on the same day plaintiff mailed an invoice and bill of lading of said boilers to Seymour, Sabin & Co., Stillwater, Minnesota. Prior to the shipment no objection had been made by Seymour, Sabin & Co. to receiving said boilers upon the ground that the boilers had not been shipped in time. After the attachment was levied, plaintiff was notified by telegraph thereof, and thereupon plaintiff notified Seymour, Sabin & Co. that, as by their contract the boilers were to be delivered in May, they would *not* thus receive them at that late day under the arrangement.

Plaintiff thereupon brought this action of replevin. The referee reported for the plaintiff. The defendant insists the title to the boilers vested in Seymour, Sabin & Co., by the delivery on board the cars. Plaintiffs insist the title had not passed.

The appellant insists that the common carrier was designated to receive and transport the boilers, and was the agent of the consignee or purchaser, and that such a delivery as was made was a delivery to the purchaser, and that Seymour, Sabin & Co. waived the right to a personal inspection and examination before acceptance, and that the plaintiff parted with all interest in the boilers and the right to control the same, and did not have the right to hold the same

for the purchase-money after such delivery, as supposed the learned referee. Our attention is directed to *Krulder* v. *Ellison* (47 N. Y. 36), where it was held that a consignor could not maintain an action against the common carrier for goods lost. There the order was in writing, and in pursuance of it the goods were delivered on board a canal boat and lost. The case differs from the one here presented, as there was a written contract which, with the delivery made under it, passed the title from the consignor to the consignee. *Thompson* v. *Fargo* (49 N. Y., 188), recognizes the case of *Krulder* v. *Ellison* (*supra*), and states that the consignee is *presumptively* the *owner :* but in that case it appeared the plaintiff did not *own the money* sent, and that he could not recover of the defendant for its loss. *Bailey* v. *The Hudson River Railroad Company* (49 N. Y., 70) is a somewhat similar case where a consignee of property brought an action to recover against the carrier, who had delivered to another party; there the bill of lading was sent, and there was a delivery under it to the carrier and no authority given by the consignee to the carrier. There had been a complete delivery to the carrier, and the title was held to pass to the consignee. The goods were not purchased, but were to be received by the consignees and sold, and there was the relation of a trustee having a title bound to accept to dispose of the property and apply the proceeds in a particular manner, and the consignors were the *cestuis qui trust,* having the legal right to enforce the terms of the agreement for their benefit. But in the case in hand, Seymour, Sabin & Co. had not subscribed any written contract, nor paid any part of the purchase-money, and the carrier had not been made their agent to accept the boilers.

If the bill of lading had been received by them and kept, an acceptance might have been inferred. Indeed, the bill of lading would have furnished evidence of an intent on the part of the vendor to deliver and the vendee to receive and accept. Before its receipt by Seymour, Sabin & Co., the shipment was countermanded. We ought not, under such circumstances, to hold that the title had passed out of the vendors, until we find some evidence of an acceptance by the vendee or its agent.

The acceptance of the bill of lading by the vendee would have changed the title. It had not taken place and there was not such a completed delivery, at the time the attachment was levied, as to

work a transfer of title from the vendor to the vendee. (*Rodgers v. Phillips*, 40 N. Y., 519.)

There was no voluntary and unconditional acceptance of the boilers by the vendee before levy, and after the levy the vendee refused to accept. Nor was there any act or conduct of the vendee evincing an intent to accept. (*Caulkins* v. *Hellman*, 47 N. Y., 449.) In this case the facts are found, and the referee in effect finds that within the intention of the parties the title did not pass, and under such circumstances to reverse his judgment, we should be obliged to say, *as a matter of law*, that the title did pass fully and completely from the seller to the purchaser. Upon the facts found, we are of the opinion that the referee's conclusion was correct. We see nothing in the exception requiring a reversal of the findings.

The judgment should be affirmed.

SMITH, P. J., and BARKER, J., concurred.

Judgment affirmed.