THOMAS WHERRY v. DULUTH, MISSABE AND NORTHERN RAIL-
WAY COMPANY.[1]

May 14, 1896.

Nos. 9844—(113).

**Personal Injury—Known Danger.**

The fact that a danger is known will preclude a recovery in case of
injury, where such danger is apparent and imminent, and of such a char-
acter as to impose upon one who undertakes to pass it a hazard that an
ordinarily prudent man would not incur. A person has no right to cast
himself upon a known danger, when the act subjects him to immediate and
great peril.

**Accident at Railroad Crossing—Contributory Negligence.**

The plaintiff approached a railroad crossing and found it blocked by a
freight train. It was apparent that the train was liable to start at any
moment. After waiting at least 20 minutes, plaintiff attempted to cross by
climbing up between the cars, some 250 feet from the engine, and was in-
jured by the sudden backing up of the train, no signal or warning having
been given. *Held*, under all of the facts of this case, that plaintiff was
guilty of contributory negligence, as a matter of law, which would prevent
a recovery.

**Same—Similar Reckless Acts by Others.**

That other men have attempted or performed reckless and negligent acts
of a certain character cannot be allowed to justify or excuse one who at-
tempts or performs the same reckless and negligent act.

**Same—Knowledge of Engineer—Evidence.**

*Held*, further, that there was no evidence which would have justified the
jury in finding that the employé who backed the train knew at the time
that plaintiff was in a dangerous place, or had reason to suppose that he
was attempting to cross the train.

**New Trial—Newly-Discovered Evidence.**

*Held*, also, that the trial court did not err when refusing to grant plaintiff's
motion for a new trial on the ground of newly-discovered evidence.

Appeal by plaintiff from a judgment of the district court for St.
Louis county in favor of defendant, entered in pursuance of a ver-
dict, after trial before Ensign, J., and a jury. Affirmed.

[1] Reported in 67 N. W. 223.

*George L. Spangler*, for appellant.
*Cotton, Dibell & Reynolds*, for respondent.

COLLINS, J. This was an action brought to recover for injuries said to have been caused by the negligence of defendant's servants while in charge of one of its freight trains at Virginia, in this state.

At this point the track ran north and south, while Chestnut street crossed it at right angles. About 5 o'clock in the afternoon of the day in .question, plaintiff, on foot, approached this crossing from the west, on his way to a point easterly, a mile or two beyond the crossing, and found the train obstructing the way, the engine headed to the south. It had been at a standstill at this point for several minutes, and it was shown upon the trial that during the time defendant's trains had been running to this point (about three months), it had been the common practice to blockade this crossing with cars for 20 or 30 minutes at a time, and that, while some pedestrians went around the obstructions, others climbed over or crawled between the cars. After waiting a few minutes, standing at a distance of some 30 feet from the train, and over 250 feet from the engine, plaintiff stepped forward, and attempted to climb up between a flat and a box car. While engaged in so doing, the train was suddenly, and without signal or warning, it was claimed, backed up, catching, and crushing one of plaintiff's feet. When counsel rested plaintiff's case upon the trial, it was dismissed by the court, upon the ground that he was guilty of contributory negligence, and thereafter a motion for new trial was denied.

The plaintiff was a man 33 years of age, fully capable of exercising due care and caution in respect to his personal safety. That the street was blockaded by the train did not warrant his attempt to pass over the cars. It might have been inconvenient for him to wait until the train moved, or to go around, a part of the way, on a street which paralleled the track, or, for the whole distance, on the right of way. That the snow was two or three feet deep, and somewhat concealed excavations on the right of way, into which he might fall, was no sufficient excuse for his adoption of an extremely hazardous and much more dangerous manner of passing

the obstruction, although such obstruction was unlawful. His reason for attempting to climb over the train, instead of going around, does not relieve him of the charge of being reckless. The fact that a danger is known will preclude a recovery, in case of injury, when it is apparent and imminent, and of such a character as to impose upon one who undertakes to pass it a hazard that an ordinarily prudent man would not incur. One has no right to cast himself upon a known danger, where the act subjects him to immediate and great peril. Now the risk and peril in attempting to pass over the cars in question was easily appreciated and understood by any person of mature years. The plaintiff had seen a person in the cab of the engine, whom he supposed to be the engineer, and he had also seen a brakeman on the top of the cars. The train was headed southerly, in the only direction trains ran, for Virginia was the northern terminus of the road, and the engine stood several rods north of the depot. The crossing had been blocked for a much longer time than was permissible under the statute, and plaintiff had waited, momentarily expecting the train to start. It was apparent that it might start at any time, and, if it should, the risk and danger were open and notorious.

On these facts it must be declared that there was a want of ordinary care upon plaintiff's part, contributing to the injuries received, as a proximate cause thereof, without which the injuries would not have occurred. The plaintiff was guilty of contributory negligence as a matter of law. It has repeatedly been so held under like circumstances. Lewis v. Baltimore & O. R. Co., 38 Md. 588; Andrews v. Central R. & B. Co., 86 Ga. 192, 12 S. E. 213; Lake Shore & M. S. R. Co. v. Pinchin, 112 Ind. 592, 13 N. E. 677; Memphis & C. R. Co. v. Copeland, 61 Ala. 376; Howard v. Kansas City, F. S. & G. R. Co., 41 Kan. 403, 21 Pac. 267; Corcoran v. St. Louis, I. M. & S. R. Co., 105 Mo. 399, 16 S. W. 411; O'Mara v. Delaware & H. C. Co., 18 Hun, 192. See, also, 2 Rorer, R. R. 1130.

There was evidence to the effect that on different occasions, when the crossing had been blocked prior to this time, travelers on the street had climbed over the cars in the presence of trainmen. There was no proof that any of the crew having charge of this particular train had ever seen this done, or had any knowledge of such acts, and in this respect, as in others, the case is essentially different

64 M.—27

from that of Henderson v. St. Paul & D. R. Co., 52 Minn. 479, 55 N. W. 53. That other men have attempted or performed reckless and negligent acts of a certain character cannot be allowed to excuse or justify one who attempts or performs the same reckless and negligent acts. The only bearing such evidence could have upon the facts in this case was that given it in Henderson v. St. Paul & D. R. Co., where it was received for the purpose of showing that defendant's engineer, having actual knowledge of the practice, should have exercised a greater degree of care when starting up, for he might reasonably expect that the practice still prevailed, and that persons were then engaged in climbing over the cars. But, as before stated, there was an entire absence of evidence which tended to show that the men having charge of this train knew, or had reason to suppose, that people crossed the cars while they blocked the street at this point.

It has been urged that it was for the jury to determine from the evidence whether the employé who set the train in motion saw the plaintiff when he boarded the cars, or at a time when he might have reason to suppose that plaintiff intended to cross over, and for that reason the court erred in its order of dismissal. We have carefully examined all of the evidence upon this point, and it seems very clear that there was none which would have warranted a finding that any of the trainmen saw the plaintiff on the cars, or in the act of getting on, or engaged in any act which would indicate that he had any intention to cross the train.

The plaintiff, after testifying that while standing in the street, before he started to go upon the cars, he looked towards the engine, and saw the engineer, was asked, "Where was he?" The answer was, "He was looking out of the cab window,—looking back at me." Evidently the plaintiff himself made no claim that the engineer was looking back when he started to go upon the cars, but rather that he had previously looked in that direction. Another witness (Tucker) stated that he saw the engineer "leaning out of his cab window, looking towards the street  *  *  *  towards the north, and lengthwise of the train." But Tucker stood at the depot 200 feet or more south of the engine, while plaintiff was about the same distance north; so that, when the engineer looked north, his back must have been towards Tucker, and the latter was not

in position to state with any accuracy which way the engineer looked. A conclusion that the engineer saw the plaintiff when going towards or climbing up on the cars, based upon Tucker's testimony, could not be allowed to stand. The witness Richards testified that he saw the engineer looking up that way "before Wherry undertook to get in there," while the witness Cook stated that he saw the engineer looking back towards the north "four or five minutes" before the train started up; and this was all of the evidence tending to show that the engineer had any knowledge of plaintiff's whereabouts when he started the train.

Among other grounds on which plaintiff moved for a new trial was that of newly-discovered evidence, based upon certain affidavits, the only one of any consequence being that of McDonald, the fireman upon the engine at the time plaintiff was injured. The substance of his affidavit was that the regular engineer was temporarily absent from the cab, when a brakeman signaled for the train to back up, and that he, the affiant, reversed the engine without any warning, although he knew that plaintiff was then trying to cross the train at the street. These statements reflect very seriously upon the character of the man who made them, for if they are true it is evident that he did not hesitate to take the chances of inflicting a wanton injury upon the plaintiff, by reversing the engine without giving notice that the train was about to be moved. But on the hearing of this motion it was established beyond doubt that McDonald, in the presence of several witnesses, had repeatedly related what he claimed were the facts surrounding the accident, but entirely at variance with the statements found in his affidavit. He was completely impeached. It was also shown that, shortly before he made the moving affidavit, he had been dismissed from defendant's employ, and also that he was present at the trial, was well acquainted with the plaintiff, and that they were often seen in conversation during the trial. The plaintiff made no denial as to the acquaintanceship or the conversations, and admitted that at the time of the trial he knew that McDonald was the fireman upon the engine when the injuries were inflicted. He offered no explanation of an apparent lack of diligence, except that McDonald, pending the trial, would not tell what his testimony would be should he be placed upon the witness stand. It is not claimed that plain-

tiff or his counsel were misled in any manner by McDonald. It was certainly laches on plaintiff's part not to have examined the fireman as a witness, when he had the opportunity, if he was anxious to elicit the truth; and, if he dared not to trust him then under oath, we cannot now relieve him, that he may experiment with the witness at another trial. Taylor v. Mueller, 30 Minn. 343, 15 N. W. 413.

We do not consider it necessary to discuss other assignments of error.

Judgment affirmed.