PRYOR v. BISHOP.

(Circuit Court of Appeals, Seventh Circuit. April 18, 1916.)

No. 2240.

COMMERCE ⊜⇒27—EMPLOYERS' LIABILITY—SERVANT EMPLOYED IN INTERSTATE COMMERCE.

A member of a train crew was not at the time of his injury employed in interstate commerce, as is necessary to make the employer carrier liable under federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [Comp. St. 1913, §§ 8657–8665]), his crew though subject to call for an interstate trip, to which, when given, they had to respond in an hour, not having been called for service, but being merely for their own convenience in their caboose, which was being moved by a transfer train between local stations.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. ⊜⇒27.]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by James F. Bishop, administrator of Orville Bordner, deceased, against Edward Pryor, receiver of the Wabash Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed, with direction for new trial.

Plaintiff in error, herein described as defendant, was sued by defendant in error, termed plaintiff herein, under the so-called federal Employers' Liability Act, in an action on the case for damages arising out of the negligence of defendant resulting in the death of plaintiff's decedent. Defendant pleaded the general issue. The only question involved is: Was plaintiff's decedent, at the time of the injury, employed by defendant in interstate commerce? The evidence disclosed the following state of facts:

---

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

On December 19 and 20, 1913, plaintiff's decedent was in the employ of defendant as a member of a train crew, consisting of an engineer, a fireman, a conductor, and two brakemen, as a brakeman in charge of freight train No. 95, covering the run between Forty-Seventh street, Chicago, and Montpelier, Ohio, a distance of 171 miles. The employment in making said run was in interstate commerce. The train arrived at the Forty-Seventh street yard of defendant at about 12:30 p. m. on the 20th of December, 1913. At Forty-Seventh street the engine was sent to the roundhouse, the cars were taken in charge by a switching crew, while the caboose was left on the track in the yard. The conductor thereupon registered for his crew in the usual manner at the defendant's office. The crew was then entitled to take an 8-hour rest. The conductor and the two brakemen, hereinafter termed the train crew, all being residents of Montpelier, Ohio, proceeded to the caboose, where as a convenience to themselves they cooked their meals, and at night went to bed in the car, themselves providing the food and bed and cooking utensils. They, as a rule, used the same caboose in their runs, no matter what run they took. While there was no arrangement in regard to the use of the caboose for meals and sleep, the defendant knew of such use. The caboose in question was expected to be used in interstate service on the next day or soon thereafter, though it had no definite scheduled starting time. As a matter of fact, the next train was called at 6:15 o'clock the following morning, December 21, 1913, but did not actually leave until 8 o'clock. Why so late the record does not state. But for the accident, decedent's crew and caboose would have been then next in line for service, though that fact did not absolutely determine whether or not his crew would take charge of that train. Landers was 7 miles from the Forty-Seventh street station. In order to be within call, it was necessary for the members of decedent's crew, being, as above stated, the crew of incoming train No. 95, to go from Forty-Seventh street to Landers which they might do in several ways. They could take the street cars to Seventy-Fifth street, a distance of about 5 miles, at their own expense, and then take a dummy, or so-called "hurdy-gurdy" train from Seventy-Fifth street to Landers, a distance of two miles. This train was for the accommodation of defendant's employés, and ran every half hour up to midnight. The other and more convenient way was to stay in the caboose and be included in a transfer train moving cars from Forty-Seventh street to Landers, which train was made up by and was in control of other employés of defendant, and ran regularly every night for that purpose. At about 11:30 p. m., December 20, 1913, decedent's crew and caboose were picked up by the transfer train at Forty-Seventh street as usual, and were located next in front of the regular caboose of the transfer train. This latter train then proceeded to Landers on defendant's tracks. While standing at Sixty-Fourth street, at about 12:50 a. m., and about a mile from Landers, the rear of the transfer train was run into through the negligence of defendant's servants, whereby the two cabooses on the transfer train were badly broken up and plaintiff's decedent killed while in bed. Under defendant's rules, train crews were called from Landers an hour and a half before trains were scheduled to leave, and were required to be on hand half an hour before leaving time. They were, in a general way, subject to call at any time after the expiration of their 8-hour rest period; that is, they were not exempt from service. There was some uncertainty whether the crew and caboose would stay at Forty-Seventh street or be taken to Landers. Often the men would go to sleep at Forty-Seventh street and wake up in Landers. As a rule they were taken to Landers. When stationed at Forty-Seventh street, the crew were usually called at the caboose or the office, unless they or some of them went away for their own purposes, in which case they were expected to leave their addresses for calling them.

At the close of all the evidence, defendant moved to dismiss the suit for want of jurisdiction, which motion was overruled. Thereupon the defendant moved the court to instruct for defendant, which motion was also denied. Exceptions to these rulings of the court were saved. No exceptions were taken to the instructions. The jury found defendant guilty, and assessed damages at $18,000.

The errors assigned are: (1) The court erred in denying said two motions; (2) in entering the said judgment; (3) in holding that the evidence proved or tended to prove facts constituting a cause of action under the federal Employers' Liability Act; (4) the verdict and judgment are against the law and the evidence.

John M. Zane, of Chicago, Ill., for plaintiff in error.

C. Helmer Johnson, of Chicago, Ill., for defendant in error.

Before BAKER, KOHLSAAT, and MACK, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). While the record cites that decedent's caboose and crew were subject to call at any time after the expiration of the 8-hour rest period, viz., 8:30 o'clock p. m., December 20, 1913, it also appears that the several members of the crew were masters of their own time and whereabouts up to the period of 1½ hours preceding the departure of a train to which they were to be assigned. They were then expected to be within call for the purpose of necessary notice. After notice, they still had an hour during which they were subject to no control by defendant.

The so-called federal Employers' Liability statute under which this suit is brought provides that every common carrier by railroad while engaging in interstate commerce shall be liable in damages to any person suffering injury while he is employed by such carrier in interstate commerce, or, in case of the death of such employé, to his personal representative for the benefit of certain parties named for such injury or death resulting in whole or in part from the negligence of the carrier or his employés, etc.

The question here presented is: Was decedent at the time of his death in the employ of defendant in the sense in which the word "employed" is used in said act? "The true test of employment in such commerce in the sense intended is," says the Supreme Court in Shanks v. The Delaware, Lackawanna & Western R. R. Co., 239 U. S. 556, 36 Sup. Ct. 188, 60 L. Ed. 436, decided on January 10, 1916: "Was the employé at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it?" The court in that case further says:

"Thus it is essential to a right of recovery under the act, not only that the carrier be engaged in interstate commerce at the time of the injury, but also that the person suffering the injury be then employed by the carrier in such commerce."

In the case just cited the plaintiff was employed in the machine shop of the defendant, which was engaged in both intrastate and interstate commerce. His work consisted in repairing certain parts of locomotives, but on the day of the injury he was engaged solely in taking down and putting into a new location an overhead countershaft, a heavy shop fixture, through which power was communicated to some of the machinery used in the repair work. "The question for decision is," says the court, speaking through Mr. Justice Van Devanter: "Was Shanks at the time of the injury employed in interstate commerce within the meaning of the Employers' Liability Act? What his employment was on other occasions is immaterial, for, as before indicated,

the act refers to the service being rendered when the injury was suffered." It was there held that Shanks was not employed in interstate commerce within the meaning of the Employers' Liability Act—citing Walsh v. New York, New Haven & Hartford R. R. Co., 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; Norfolk & Western Ry. Co. v. Earnest, 229 U. S. 114, 33 Sup. Ct. 654, 57 L. Ed. 1096, Ann. Cas. 1914C, 172; Pederson v. Delaware, Lackawanna & Western R. R. Co., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1155, Ann. Cas. 1914C, 153; St. Louis, San Francisco & Texas Ry. Co. v. Seale, 229 U. S. 156, 33 Sup. Ct. 651, 57 L. Ed. 1129, Ann. Cas. 1914C, 156; North Carolina R. R. Co. v. Zachary, 232 U. S. 248, 34 Sup. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159; New York Central R. R. Co. v. Carr, 238 U. S. 260, 35 Sup. Ct. 780, 59 L. Ed. 1298; Illinois Central R. R. Co. v. Behrens, 233 U. S. 473, 34 Sup. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163; Delaware, Lackawanna & Western R. R. Co. v. Yurkonis, 238 U. S. 439, 35 Sup. Ct. 902, 59 L. Ed. 1397.

The accident was caused by defendant's engine, which was running behind the transfer train without any cars, operated by defendant's servants. Said engine was at the time bound for the Landers yard, there to take out and haul a train from Landers to Forrest, Ill., an intrastate haul. Those in charge of the transfer train, which was also engaged in intrastate commerce so far as the record discloses, were also chargeable with negligence and conceded to have been guilty of not using due care. Thus neither defendant's transfer train nor the said engine were at the time of the death engaged in interstate commerce.

In St. Louis & San Francisco Ry. v. Seale, 229 U. S. 156, 33 Sup. Ct. 651, 57 L. Ed. 1129, Ann. Cas. 1914C, 156, where the train consisted of intrastate and interstate cars, one whose business it was, as a yard clerk, to examine in-coming and out-going trains, make a record of the seals on car doors, check the cars with conductors' list, and put labels on the cars to guide switching crews in breaking and making up out-going trains, and who was killed while on the way to meet an in-coming train, for that purpose, was held to be in the employ of the railroad in interstate commerce. Suit was begun in the state court by those authorized under the Texas statute. Held, that the suit was one which arose exclusively under the federal Employers' Liability Act, which requires suit to be brought by the legal representatives. It was therein further decided that decedent's service was in interstate commerce notwithstanding the train had arrived at its terminus hauling both intrastate and interstate cars.

In Pedersen v. Delaware, Lackawanna & Western R. R. Co., 229 U. S. 146, 151, 33 Sup. Ct. 648, 649 (57 L. Ed. 1155, Ann. Cas. 1914C, 153), the court says:

"Among the questions which naturally arise in this connection are these: Was that work [of the plaintiff] being done independently of the interstate commerce in which the defendant was engaged, or was it so closely connected therewith as to be a part of it? Was its performance a matter of indifference so far as that commerce was concerned, or was it in the nature of a duty resting upon the carrier?"

In that case the plaintiff was engaged at the time of the injury in carrying bolts or rivets from a tool car to a bridge which he was helping to repair, when he was run down by an intrastate passenger train. The tracks and bridge at that point were used by defendant both in intrastate and interstate commerce. Held, that the plaintiff was in the employ of defendant in interstate commerce. "There can be no doubt," says the court, "that a right of recovery thereunder [federal Employers' Liability Act] arises only where the injury is suffered while the carrier is engaged in interstate commerce and while the employé is employed by the carrier in such commerce." This rule is approved in Illinois Central R. R. Co. v. Behrens, Adm'r, 233 U. S. 473, 34 Sup. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163. In this case the decedent was engaged at the time of his death as a member of a switch engine crew, operating only within the city of New Orleans. Sometimes the switch engine handled interstate cars, sometimes intrastate cars, and sometimes both. At the time of the accident it was handling only intrastate cars. Held, the act did not apply.

In North Carolina R. R. Co. v. Zachary, 232 U. S. 248, 260, 34 Sup. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159, which was a case in which decedent, a locomotive fireman, had been oiling up, firing, and preparing his engine for an interstate trip, but had left his engine to go to his boarding house within the limits of the railroad yard, on a personal errand, with intention shortly to return to his engine to take his run, and was killed. Held, that decedent had entered upon his interstate duties and was, when killed, employed by defendant in interstate commerce. This case is approved in N. Y. C. & H. R. R. R. v. Carr, 238 U. S. 260, 35 Sup. Ct. 780, 59 L. Ed. 1298, decided by the United States Supreme Court on June 14, 1915.

In St. Louis S. W. Ry. Co. v. Harvey, 144 Fed. 806, 75 C. C. A. 536, the Circuit Court of Appeals for the Eighth Circuit states the rule as follows:

"The second query is: Was there substantial evidence that the act of running this car upon the track at night without a light was done in the conduct of any of the business of the master? For if a servant step aside from the business of his master for never so short a time to do any act that is not a part of that business, the relation of master and servant is for the time suspended, and the acts of the servant during that interval are not his master's, but his own."

In Harvey v. Texas & Pacific Ry. Co., 166 Fed. 385, 92 C. C. A. 237, the Circuit Court of Appeals for the Fifth Circuit said:

"We are of the opinion that the servant should be deemed in the master's service whenever present to perform his duty and subject to orders."

Plaintiff in that case was on his way to the place where he was to work, but was subject to orders and ready to help, if needed, in moving an engine. Where one had finished his day's work and was taking a hand car back to a designated place under the direction of his employer, he was still in his master's employ. San Pedro, Los Angeles & Salt Lake R. R. Co. v. Davide, 210 Fed. 870, 127 C. C. A. 454.

In Lamphere, Adm'r, etc., v. Oregon R. R. & Navigation Co., 196 Fed. 336, 116 C. C. A. 156, 47 L. R. A. (N. S.) 1, the decedent, a

fireman, was proceeding to his work under explicit orders when killed. Held that, even though his work had not yet begun, he was acting in the capacity of a servant of defendant in interstate commerce.

Where, after hours of work, one Dishon was attempting to pass from a section house, where he boarded, across defendant's tracks through an opening between the cars, maintained for that purpose by the other employés, which opening was at the time of the accident closed while Dishon was going through, it was held by the Circuit Court for the Eastern District of Kentucky, in Dishon v. Cincinnati, N. O. & T. P. Ry. Co., 126 Fed. 195, that those closing the gap were fellow servants of Dishon. On appeal, however (133 Fed. 471, 477, 66 C. C. A. 345), the court failed to sustain the judgment on the fellow-servant theory, but held that decedent was guilty of contributory negligence.

In Best v. N. Y. C. & H. R. R. R. Co., 117 App. Div. 739, 102 N. Y. Supp. 957, the plaintiff was an extra brakeman. He was notified that he might be called to go out on a run. He was crossing the tracks to the company's clubhouse in order to be on hand, if called, when he was struck. Held, not employed by the defendant at the time.

It was held in Harris v. City & E. G. R. R. Co., 69 W. Va. 65, 70 S. E. 859, 50 L. R. A. (N. S.) 706, Ann. Cas. 1912D, 59, that one who was riding on defendant's train, going to his work before the hour when his work began, must be regarded as a passenger, and not a servant.

Plaintiff relies upon the case of Moyse v. Northern Pacific Ry. Co., 41 Mont. 272, 108 Pac. 1062. Moyse was conductor of a freight train. He was required at all times to be within call, was subject to discipline if he was not, and was expected to occupy the caboose while waiting. He had a right to use the caboose, a right which the company was not at liberty to withdraw at will. He was injured by defendant's employés after his pay had stopped on registration. Held, that he was in the caboose in the course of his employment, and that the company was liable for injuries caused by the negligence of its other servants under a statute abolishing the fellow-servant rule as to railroad employés.

Assuming that the court correctly held that the jury in the Moyse Case was justified in finding the relation of master and servant actually to exist at the time of the injury, it is to be noted that this was based upon the finding of a contractual right as well as a duty to be in the caboose at the time. Moyse was there pursuant to a definite obligation and, even though merely awaiting a call, might be held to be acting as an employé in so occupying the caboose. In the instant case, however, there was no such duty; the deceased could as well have been at a city hotel; his only duty at the time was to be within call, either personal or telephonic. That he was on the company's property at the time of the injury was due, not to an obligation, but to a privilege, a license; in being there, he was acting, not as an employé, but as a licensee.

If, however, he could be deemed to be in the employment of the company at the time of the injury, nevertheless he was not then actually employed in interstate commerce. His actual employment at

the time was holding himself ready in the city of Chicago to respond to a call for service. That the call, when it came, would be for an interstate trip, does not make the waiting in Chicago an actual engagement in interstate commerce, within the terms of the federal act.

Plaintiff's claim that, by the hitching on of the caboose in question to the transfer train, decedent's crew was called, and that his interstate service had thus actually begun, does not commend itself to our judgment. It was not, nor was it intended as such. Clearly the crew had not started with the caboose upon their home run. Neither does it appear from the evidence that the caboose and train crew were at the place of the injury for the benefit of defendant, or that they were wanted there at the time, or that there was any understanding that they should be at Landers at or near that time, or that they were at the place of the accident with other right than the mere sufferance of defendant, that being the most convenient way for them to get to Landers and secure sleep and other accommodations for the night, or that they were under any expectancy of a call, or that their acts in the premises had any bearing upon interstate commerce, or that the facts of the case brought the decedent within the provisions of the federal Employers' Liability Act.

We are unable to discover from the evidence or the law upon what ground plaintiff's decedent's presence at or near Landers at the time of the accident can be said to have been a step in the performance of any actual service to defendant in interstate commerce. He was there in no sense under the direction of defendant growing out of the relation of master and servant. He was his own master. As was said in Illinois Central R. R. v. Behrens, supra:

"That he [the servant] was expected, upon the completion of that task [moving intrastate cars], to engage in another which would have been a part of interstate commerce, is immaterial under the statute, for by its terms the true test is the nature of the work being done at the time of the injury."

To hold that decedent was, at the time of the injury—some 4 or 5 hours before he was wanted by defendant—employed in interstate commerce, would practically make the defendant liable to him as engaged in interstate commerce at all times. Such is not the purpose of the act. The statute was enacted only with reference to those railroad employés who, while in the actual discharge of their duties in interstate commerce, are injured.

The facts pertaining to the question of jurisdiction are conceded. The record presents no other ground of federal jurisdiction than the bringing of the suit under the federal Employers' Liability Act, so called. It was error on the part of the District Court to deny the motion to dismiss.

The judgment of that court is therefore reversed, with direction to grant a new trial.