## LEO DAVIS v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.[1]

### July 14, 1916.

### Nos. 19,815—(212).

**Federal Employer's Liability Act — question for jury.**

1. The evidence considered and *held* to make it a question for the jury whether an unintentional delay of a few hours in plaintiff's work, pertaining to interstate commerce transportation, removed him from the protection of the Federal Employer's Liability Act.

**Evidence of negligence.**

2. While the evidence tending to prove negligence is weak, we are not disposed to hold upon this appeal that it is so clearly insufficient that the directed verdict should be sustained on that ground, when not sustainable on the one assigned by the trial court.

Action in the district court for Ramsey county by the guardian ad litem of plaintiff minor to recover $25,000 for personal injury received

[1] Reported in 158 N. W. 911.

while in the employ of defendant. The case was tried before Brill, J., who granted defendant's motion for a directed verdict. From an order denying his motion for a new trial, plaintiff appealed. Reversed.

*Samuel A. Anderson* and *A. F. Storey,* for appellant.

*Edward C. Stringer, McNeil V. Seymour.* and *Edward S. Stringer,* for respondent.

HOLT, J.

This action to recover damages for personal injuries is brought by plaintiff against his employer, a railway company, doing business as a common carrier. The evidence justified a finding that plaintiff up until 10:30 a. m. of the day of his injury was engaged in the duties of a rear brakeman on a railway freight train of the defendant, which train was carrying interstate commerce. The legal proposition is whether plaintiff at the time of his injury, some hours later, was under the protection of the Federal Employer's Liability Act. If, as a matter of law, he was not, concededly the trial court should be sustained in directing a verdict for defendant.

The freight train, upon which plaintiff was working as rear brakeman, left Council Bluffs, Iowa, at 11:55 p. m. October 25, 1914, and arrived at Valley Junction, the same state, at 10:30 a. m. the next day. That was the end of plaintiff's run. He still had these duties to perform: Take down the markers (the lanterns upon the caboose); clean and fill eight lamps and lanterns; sweep out the caboose; register in, and, in this instance, get a supply of kerosene from the storehouse. The testimony is clear that these duties could easily be performed in an hour. As soon as the caboose was set in on its proper track, plaintiff took in the markers and obtained the needed kerosene, but then, instead of pursuing his tasks, he sat down to read, fell asleep, and did not awake until 2:30 p. m. He was through an hour later, and then started easterly through the yard, a usual route for employees to take in leaving their work, walking between two tracks. The space between was sufficient, so that a person being mindful of the situation could avoid being struck by passing locomotives. Plaintiff intended to keep in the clear, but unconsciously swerved towards the track upon which a locomotive with the tender in

front was then approaching him from behind. He was hit and his left foot crushed.

The trial court was of the opinion that the proof made defendant's negligence a jury question, but stated: "I think it must be held in this case that the plaintiff was not engaged in interstate commerce at the time of his injury. I think he cannot prolong the relation at his own will or convenience. I think that he had terminated that relation when he exceeded the reasonable time in which to complete his work; that is, where he abandoned the work, as he did, for several hours after his arrival at the point of his destination."

Plaintiff's duties with respect to the caboose and lanterns were as above stated, but it would seem that the evidence leaves room for the conclusion that, so long as these matters were gotten in proper condition before the next trip of the caboose, defendant found no fault. The trainmaster of defendant at Valley Junction testified that it was the rear brakeman's duty to take down the markers, get kerosene, fill and clean the lamps and lanterns, and leave the caboose clean, and that the brakeman might use his judgment as to when it shall be done so long as it is done. It would also seem a proper inference that this caboose was regularly used in the freight train No. 90, upon the division from Council Bluffs to Valley Junction. And further that the train, known as No. 90, was one of defendant's regular freight trains coming from the west to Omaha, but running through that city and across the Missouri river over the tracks of the Union Pacific Railway, to Council Bluffs, and thence to Valley Junction and clear to Chicago. It might thus be found that the caboose and its lamps and lanterns were an instrumentality employed in interstate commerce, and that plaintiff in preparing the same for the next trip was "engaged in interstate transportation or in work so closely related to it as to be practically a part of it." Such work may consist in "repairing or keeping in usable condition a roadbed, bridge, engine, car or other instrument then in use in such transportation." Shanks v. Delaware, L. & W. R. Co. 239 U. S. 556, 36 Sup. Ct. 188, 60 L. ed. 436.

It would seem clear from the Federal decisions that, when an employee is summoned for duty in relation to interstate transportation, he is within the protection of the act of Congress as soon as he comes upon the premises of the railway company. It should follow that he is under the

same protection while, after leaving his duties, he is passing out of the premises of his employer, provided it is done within a reasonable time and along the usual route. It has been held that a clerk, on his way through the railroad yards to mark cars containing interstate commerce, comes within the protection of the act (St. Louis, S. F. & T. Ry. v. Seale, 229 U. S. 156, 33 Sup. Ct. 651, 57 L. ed. 1129, Ann. Cas. 1914C, 156); also a fireman, engaged in preparing an engine for like purpose, who, on an errand consistent with his duties, crosses the railroad tracks and is injured through the negligence of a fellow servant (North Carolina R. Co. v. Zachary, 232 U. S. 248, 34 Sup. Ct. 305, 58 L. ed. 591, Ann. Cas. 1914C, 159). In Padgett v. Seaboard Air Line Ry. 99 S. C. 364, 83 S. E. 633, affirmed on writ of error in 236 U. S. 668, 35 Sup. Ct. 481, 59 L. ed. 777, the question was left to the jury to find whether an engineer, who had been on the premises of the railway company for several hours before he was due to take out a locomotive on interstate transportation, could, during that time, be said to be engaged in such work. Horton v. Oregon-Washington R. & N. Co. 72 Wash. 503, 130 Pac. 897, 47 L.R.A.(N.S.) 8; Lamphere v. Oregon R. & N. Co. 196 Fed. 336, 116 C. C. A. 156, 47 L.R.A.(N.S.) 1; Philadelphia, B. & W. R. Co. v. Tucker, 35 App. (D. C.) 123, L.R.A. 1915C, 39.

Employees engaged in repairs upon cars or locomotives employed in interstate transportation come within the Federal act. Winters v. Minneapolis & St. L. R. Co. 126 Minn. 260, 148 N. W. 106, and cases there cited. Gaines v. Detroit, G. H. & M. Ry. Co. 181 Mich. 376, 148 N. W. 397. Keeping a car, coach or locomotive engaged in such transportation "in usable condition" seems to be placed with relation to the Employer's Liability Act in the same category with repairs on like instrumentalities. Shanks v. Delaware, L. & W. R. Co. supra. A usable condition with respect to a caboose engaged in interstate transportation requires cleaning thereof, and the cleaning and filling of the markers and lamps thereon. In view of the testimony of the trainmaster, it seems to us that the learned trial judge erred when he concluded that, as a matter of law, plaintiff's right to the protection of the Federal statute had expired at the time the accident occurred.

It is not perceived how the Federal 16-hour service law can have any

bearing on this appeal, for it is by no means clear that plaintiff had been on duty more than 16 hours when he was hurt.

Defendant contends that, even conceding the existence of a jury question as to plaintiff being within the protection of the Federal act at the time of the injury, the proof of any negligence on the part of defendant, or of any of its servants, is so inadequate that no verdict could rest thereon. There is much force to the contention. There was no evidence of unusual or excessive speed in the operation of the engine which caused the accident. Plaintiff's counsel requested that the alleged negligence, in not having a lookout on the tender, be not submitted to the jury. The only negligence left was the the alleged failure to ring the bell upon the engine. Plaintiff was the only witness who gave positive testimony that there was no ringing. Five persons nearby, including the engineer and fireman on this engine, testified positively that the bell was ringing. Two other persons, who were in a position to hear the bell, could not tell whether it was ringing or not, evidently preoccupied with something else. And one of them, although very near to the engine, was not conscious of the alarm blast of the whistle given a moment before plaintiff was struck. Since the trial court saw in this situation of the evidence a jury question as to the ringing of the bell, the majority of the members of this court are not disposed to differ with him, since, upon the oral argument, little attention was given the question, appellant's counsel taking for granted that the trial court's view of the same was correct.

Order reversed.