No. 20,598.

J. E. BUMSTEAD, *Appellee* v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

RAILROADS—*Employee—Injured While `Off Duty—No Recovery Under Federal Employers' Liability Act.* The plaintiff was a freight conductor whose usual run was from Wichita to Durand and return. He came to Durand on the morning of January 5, 1915, with a train of interstate cars, registered in what is called the rest book, got lunch, went to his caboose and finished up his reports and then went to bed in the caboose as he had done for some fourteen years. At the expiration of eight hours and thirty minutes he was liable at any time to· be called. The yardmaster had full charge as to making up the .trains and knew from the registry where the plaintiff was and would have him called. About seven o'clock that evening the yard clerk—an employee of the defendant who knew the plaintiff was staying in the caboose—called him to leave with his train about eight fifteen or eight thirty. The plaintiff was required to report for duty thirty minutes before his train was to leave, when he would go and get his orders and get ready to go out. His time began when the train started. After being called and while dressing preparatory to going and getting something to eat and then reporting for duty, the crew making up his train moved certain cars—part of them interstate—against. the caboose so violently as to injure him. *Held,* that he was not at the time engaged in service in interstate commerce within· the terms of the federal employers' liability act.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed January 6, 1917. Reversed.

*W. P. Waggener, Walter E. Brown,* both of Atchison, *A. E. Crane,* of Topeka, and *J. C. Bentley,* of Wichita, for the appellant.

*John W. Adams,* and *George W. Adams,* both of Wichita, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff recovered a judgment for damages alleged to have been caused by the negligence of defendant's agents and servants in moving certain freight cars against the· caboose, in which he·was at the time, with such violence

as to cause him serious injury. The action was under the federal employers' liability act. The defendant appeals and assigns error in giving and refusing instructions and in over-ruling its motion for a new trial. The main contention, how-ever, is that under the evidence it was error to instruct or find that the plaintiff at the time of the injury was engaged in interstate commerce.

Aside from this matter a careful examination of the record discloses no material error.

It is conceded that in order for the plaintiff to recover both parties must at the time of the injury have been engaged in interstate commerce. The salient facts of the case are that the plaintiff was a conductor of one of the defendant's freight trains from Wichita to Durand. On the morning of January 9, 1915, he arrived at Durand with his train containing about twenty-two cars, destined for Missouri, Texas and Louisiana. He registered in what is called the rest book, got lunch, went to his caboose and finished up his reports which took twenty or thirty minutes, and then went to bed in the caboose, as he had done for some fourteen years. At the expiration of eight hours and thirty minutes after arrival he was liable at any time to be called. About seven o'clock that evening he was called to leave with his train about eight-fifteen or eight-thirty. At about seven-fifteen or seven-twenty the collision occurred. He was required to report for duty thirty minutes before his train was to leave which that night would have been about seven-forty-five. When reporting for duty it was his task to go to the yard office, get the bills and other orders and get ready to go out on his run. When the collision occurred he was dressing preparatory to going and getting something to eat and then reporting for duty. Durand had very slight accommodations, and it had been and was the custom for train men to sleep in the caboose. There were interstate cars on the train that injured him. The collision occurred while making up the train on which the plaintiff was to run as conductor and which contained interstate cars.

The plaintiff testified that: "Thirty minutes before the train would go, I would go and get our orders and get ready to go out. Our time begins at the time the train starts. The time it is called to leave." The yardmaster had full charge

as to making up trains and knew from the registry where the plaintiff was and would have him called. The yard clerk called him on this occasion. He was one of the employees of the defendant and knew the plaintiff was staying in the caboose. The plaintiff was therefore an employee of the company, having come in and preparing to go out with an interstate train, although his pay would not begin until the starting of the return train. Was he at the time of the injury engaged in service in interstate commerce? The language of the act is:

"That every common carrier by railroad while engaged in commerce between any of the several states . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce." (Part 1, 35 U. S. Stat. at Large, ch. 149, § 1, p. 65.)

The test has been thus stated by the supreme court of the United States:

"Was the employe at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it." (*Shanks v. Del., Lack & West. R. R.*, 239 U. S. 556, 558. See, also, *Chi., Burlington and Q. R. R. v. Harrington*, 241 U. S. 177, 180.)

To support his contention that he was within the terms of the act the plaintiff cites a list of decisions, each of which we have examined. *Pedersen v. Del., Lack. & West. R. R.*, 229 U. S. 146, *Missouri, K. & T. Ry. Co. v. United States*, 231 U. S. 112; *Second Employers' Liability Cases*, 223 U. S. 1, and *N. Y. Central R. R. v. Carr*, 238 U. S. 260, were cases so different from this as to the facts involved that their extended notice could avail nothing. The same may be said of *Southern R. Co. v. Jacobs*, 116 Va. 189; *Findley v. Coal & Coke Ry. Co.* (W. Va. 1915) 87 S. E. 198; and *Bruckshaw v. Chicago R. I. & P. Ry. Co.*, (Iowa, 1915) 155 N. W. 273. The others we will refer to briefly. A fireman in the employ of an interstate railway carrier after inspecting, oiling, firing, and preparing his engine for an intrastate movement of a train containing some interstate cars was killed by a switch engine while he was attempting to cross the tracks between the engine and his boarding house. (*Nor. Car. R. R. Co. v. Zachary*, 232 U. S. 248.) The evidence tended to show that a train had come into a place in North Carolina from a point in Virginia; that a shifting crew were working the train so as to

take two cars from it to be moved between two points in North Carolina by the engine on which the deceased was employed as fireman for the trip that was about to begin and had already prepared his engine for the purpose. In answer to the argument that his employment had not begun it was said:

"It seems to us, however, that his acts in inspecting, oiling, firing, and preparing his engine for the trip to Selma were acts performed as a part of interstate commerce, and the circumstance that the interstate freight cars had not as yet been coupled up is legally insignificant." (p. 260.)

It was also said that assuming that when injured he was going to his boarding house it also appeared that he was shortly to depart upon his run, having just prepared his engine for the purpose and that he had not gone beyond the limits of the railroad yard when he was struck.

"There is nothing to indicate that this brief visit to the boarding-house was at all out of the ordinary, or was inconsistent with his duty to his employer. It seems to us clear that the man was still 'on duty,' and employed in commerce, notwithstanding his temporary absence from the locomotive engine." (p. 260.)

It was held that there was at least evidence sufficient to go to the jury. The United States circuit court of appeals for the ninth circuit held in *Lamphere v. Oregon R. & Nav. Co.*, 196 Fed. 336, that a locomotive fireman in the employ of a railroad company engaged in interstate commerce ordered by his superiors to report at a station to be transported to another station to relieve the crew of an interstate train and who, when approaching the station over a crossing was struck and killed through the negligence of other servants of the company also operating an interstate train was employed in interstate commerce at the time of his death. It was said in the opinion that the test is—

"What is its effect upon interstate commerce? Does it have the effect to hinder, delay, or interfere with such commerce? As applied to the present case, it is this: Was the relation of the employment of the deceased to interstate commerce such that the personal injury to him tended to delay or hinder the movement of a train engaged in interstate commerce? To that question we think there can be but one answer. Under the imperative command of his employer, the deceased was on his way to relieve, in the capacity of a fireman, the crew of a train which was carrying interstate commerce, and the effect of his

death was to hinder and delay the movement of that train." (p. 340.)

It seems that Lamphere was required to respond whenever ordered and that about seven-fifteen p. m. he was ordered to go from his home to the depot and there secure transportation and go on board a certain interstate train due at seven-forty-five and proceed to another town and there relieve an engine crew which had been continuously employed more than .sixteen hours on an engine moving an interstate train. After receiving this order he hastened to the depot and had reached a crossing in the yards where the cars were cut out where the injury occurred. There is nothing showing when his pay began, but it is clear that he was acting in obedience to the order and engaged in carrying it out when the collision occurred. In *United States v. Chicago, M. & P. S. Ry. Co.*, 197 Fed. 624, employees of a railroad company engaged in moving freight from an intermediate point on its line to another where it was taken up by regular trains for interstate shipments, were held to be employed in interstate commerce. It was also held that under the hours-of-service act brief periods allowed for meals should not be deducted from the time of service in order to break its continuity. In *Chicago, K. & S. Ry. Co. v. Kindlesparker*, 234 Fed. 1, it was decided by the circuit court of appeals for the sixth circuit that an engine withdrawn from the service for repairs and on being repaired again used to transport interstate commerce, though the repairs extended over several months, was not withdrawn from interstate commerce and that an employee injured while repairing it might sue under the federal employers' liability act. It was pointed out that there is found in the decisions a marked distinction between injuries suffered by an employee engaged in repairing an instrument interstate in character and those received by an employee using or operating the same kind of an instrument while handling only intrastate traffic. It was said:

"As to the repairer, his service partakes of the character of the instrumentality; as to the operative, his service partakes of the character of the traffic." (p. 6.)

The case of *Moyse v. Northern Pacific Ry. Co. et al.*, 41 Mont. 272, involved the question whether a freight conductor, required to be within call and expected to occupy the caboose

of his train at night while awaiting the call to go on duty, and who had the right so to do and who so occupied it, was while so occupying it in the discharge of his duties though his pay stopped on his registering on arrival and would not begin until he was called to make his return trip, and it was held that he was in the discharge of his duties while so occupying the caboose. In the opinion, it was said:

"It is not at all conclusive that the pay of the plaintiff ceased when he registered in on his arrival at Butte. In the light of the evidence, under the contract of employment it was within the contemplation of both parties that he should hold himself subject to the order of the company after his pay had ceased; and it seems clear that a contract including a stipulation of this kind, express or implied, is not open to any legal objection." (p. 288.)

In *Neil v. Idaho & Washington N. R. R.*, 22 Idaho, 74, the facts showed that a freight conductor had gone to the engine on the front end of his train consisting of about twenty cars of intrastate and interstate freight and had a conversation with his engineer and had given him his clearance card and was going back to his caboose when he was struck by a switch engine. He was unnecessarily walking on what was known as the scale track instead of walking on the space between the tracks and it was held that he was engaged in interstate commerce to the extent of getting his train ready for that purpose. It was said:

It seems to us that preparation was being made to have his train leave Spirit Lake, and that he was engaged in getting his train ready for the transportation of freight both within the state and beyond its boundaries, and that he was engaged in interstate commerce, within the meaning of that term as used in said act of Congress." (p. 90.)

By the supreme court of Washington in *Horton v. Oregon-Washington R. & Nav. Co.*, 72 Wash. 503, it was decided that a pumper at a pumping station for locomotives of a railroad engaged in both intrastate and interstate commerce who was furnished by the road with a small hand-car for going the two or three miles from his home to the station, and who, while going to the station, was struck by an interstate train, was in an employment having a substantial connection with interstate commerce and hence within the act. It was argued that the decedent was not actually and actively engaged in interstate commerce when killed, but the court said that he was going to

the pumping station by means supplied by the master and was performing a necessary part of his employment in the manner contemplated by the master, and the situation was regarded as similar to that of Lamphere in his case against the Oregon Railroad and Navigation Company (196 Fed. 336). It was also remarked that if when the decedent was killed his place had not been supplied by another the movement of the train engaged in interstate commerce must have ceased and it was said that this demonstrated the real or substantial connection of his employment with such commerce.

In *Easter v. Virginian Ry. Co.*, (W. Va. 1915), 86 S. E. 37, the plaintiff was a brakeman on a train employed in interstate traffic and was on the engine as the train entered the yard where he got off while it was moving slowly and waited until the caboose came up and then entered it for the purpose of washing and changing his clothing. After he had completed his toilet he and a fellow brakeman started across the railroad yards and just as they approached the main track were struck by the tender of an engine running backward down the track to the roundhouse. It was ruled that the brakeman was within the terms of the act, that the relation of master and servant does not necessarily terminate the instant the train reaches its destination in the yards or the servant ceases to labor, "but continues for a reasonable time thereafter to enable such employee to wash himself and change his soiled clothing, in the caboose provided with the conveniences therefor, before going to his lodging place; such being the custom of trainmen." (Syl. ¶ 7.) It was further held that an hour was not, as a matter of law, an unreasonable time for proper preparations before leaving the train for his lodging place. In *Peery v. Illinois C. R. Co.*, 123 Minn. 264, plaintiff was conductor of a freight train operated from Paducah to Fulton, about forty-five miles, and immediately back to Paducah the same day. The trains were almost wholly composed of interstate shipments. On the date of the injury he had taken an interstate train to Fulton and was returning without any interstate cars. It was said that his employment at the time was not independent of interstate commerce, that his daily routine related almost wholly thereto and that he was not injured while engaged in some work purely of intrastate character. In *Graber v. Duluth, S. S.*

& A. R. Co., 159 Wis. 414, it was held that a brakeman, who, after finishing his regular duties after a run between two state points on a train which had some interstate cars in it, went to a saloon and from there started to cross over a train to go to the station and learn whether or not the conductor had any further orders for him and was injured while crossing such train, was employed in interstate commerce. It was held by the court of civil appeals of Texas, in *C. R. I. & T. Rly. Co. v. Oldridge*, 33 Tex. Civ. App. 436, that a brakeman who, in obedience to a custom claimed to exist, went to the railroad yard while his train was being made up and entered the caboose where he was injured, could not be deemed a trespasser or mere licensee, that his duties did not begin until his train was made up, the question of his status being for the jury. It appeared to be customary for the brakeman when called to go out on his run to go with his lantern and valise to the caboose while it was yet in the yards and before the train was made up and there wait for the conductor, although he had no duty to perform in making up the train and aside from the case of preparation, his work did not really begin until the train was fully made up. The action was not brought under the federal employers' liability act. A brakeman employed by the day, while on his way from his house to the roundhouse to take out his engine, was injured and was held to be at the time in his employer's service. *Missouri K. & T. Rly. Co. of Texas v. Rentz*, (Tex. Civ. App. 1914) 162 S. W. 959. The rule of another case was followed, that—

"'He is to be deemed in the master's service whenever present to perform his duty under the contract creating the relation of master and servant and subject to orders, although at a given moment he may not be engaged in the actual performance of any labor'." (p. 960.)

In *St. Louis South Western Ry. Co. v. Brothers*, (Tex. Civ. App. 1914) 165 S. W. 488, an extra brakeman at all times subject to call and paid for his services from the time his trip was begun until his return was sent out on a train engaged in interstate commerce and while returning on a pass on another train of the defendant engaged in interstate commerce, was injured and was held to be within the act. It was held by the supreme court of South Carolina in *Sanders v. Charleston & W. C. Ry. Co.*, (S. Car. 1914) 81 S. E. 283, that a track laborer

asleep on his bunk at night was within the terms of the act. It was said that "the law imputed to him actual service on the track, and extended to him the rights of such a worker." (p. 283.) *Thornbro v. Railway Co.*, 91 Kan. 684, 139 Pac. 410, is also cited the brakeman in that case being injured while uncoupling an interstate car.

. The plaintiff had not, like the decedent in the Zachary case, already begun the performance of any service for the company nor was he on his way to begin the performance of his duty like Lamphere, nor had he gone to his train like Neil, nor was he like Graber seeking his superior officer to see if any further orders awaited him, nor was he on his way to begin his duties like Rentz. He was certainly as well or as nearly within the act as Sanders, and possibly as well within it as the decedent in the Easter case or Moyse, whose cases were passed upon not by federal but by state courts.

But the national courts are the final arbiters as to national legislation and their decisions are necessarily controlling. In *St. L. & San Francisco Ry. v. Seale*, 229 U. S. 156, a yard clerk whose main duty was to examine, check and make a record of incoming and outgoing cars and labeling them as a guide to switching crews, was on his way through the yard to meet an incoming interstate freight train when struck and fatally injured. He was held to have been engaged in interstate commerce. *Del., Lack. & West. R. R. v. Yurkonis*, 238 U. S. 439, was an action to recover for injuries received while mining coal in a colliery of the defendant, such coal being intended for use as interstate commerce. He was held to be not within the statute. Coming to the most recent decisions, the case of *Shanks v. Del., Lack. & West. R. R.*, 239 U. S. 556, involved the question whether or not an employee in a machine shop was, while taking down and putting up fixtures therein, engaged in interstate commerce. The court held that he was not, and after referring to the Pedersen, Seale, Zachary, Behrens and Yurkonis cases and others, said it was plain in view of the test laid down in the decisions cited that Shanks was not employed in interstate transportation or in keeping in usable condition any instrument then in use in such transportation. A similar ruling was made in *Chi., Burlington & Q. R. R. v. Harrington*, 241 U. S. 177, concerning an employee en-

gaged in removing coal from storage tracks to coal chutes, such coal having come from another state and to be used on locomotives in interstate work. The circuit court of appeals for the seventh circuit in *Pryor v. Bishop,* 234 Fed. 9, considered a situation somewhat like the one now before us. The decedent was a member of a train crew in charge of an interstate freight train. Arriving at Forty-seventh street, Chicago, the engine was sent to the roundhouse and the cars left in charge of a switching crew, the caboose being left on a track in the yard. The conductor reported for the crew at the defendant's office. The crew were then entitled to an eight-hour rest. The conductor and the two brakemen went to the caboose, where they cooked their meals and went to bed. There was no arangement in regard to this use of the caboose and the defendant was ignorant thereof. The caboose was expected to be used in interstate commerce next day or soon thereafter but had no definite scheduled starting time. The next train was called for six-fifteen the following morning, but did not leave until eight o'clock. But for the accident the crew in question would have been next in line for service. In order to be within call it was necessary to go to Landers, seven miles away, one means of which was to stay in the caboose and be included in a transfer train to Landers, which train was made up by other employees, and ran regularly every night for the purpose. While the caboose was included in this train it was at about twelve-fifty run into by an engine and the decedent was killed. Neither the transfer train nor the engine in question was at the time engaged in interstate commerce. Under the rules train crews were called from Landers an hour and a half before trains were scheduled to leave and were required to be on hand half an hour before leaving time. They were in a general way subject to call any time after the expiration of their eight-hour rest period; that is, they were not exempt from service. Often they would go to sleep at Forty-seventh street and wake up in Landers. As a rule they were taken to Landers. When stationed at Forty-seventh street they were usually called at the caboose or the office, unless they went away for their own purposes, in which case they were expected to leave their address for calling them. The court after a

thorough review of the authorities held that the employee was
not within the act.

"If, however, he could be deemed to be in the employment of the
company at the time of the injury, nevertheless he was not then ac-
tually employed in interstate commerce. His actual employment at the
time was holding himself ready in the city of Chicago to respond to a
call for service. That the call, when it came, would be for an inter-
state trip, does not make the waiting in Chicago an actual engagement
in interstate commerce, within the terms of the federal act.    .    .    .
To hold that the decedent was, at the time of the injury    .    .    em-
ployed in interstate commerce, would practically make the defendant
liable to him as engaged in interstate commerce at all times. Such is
not the purpose of the act. The statute was enacted only with refer-
ence to those railroad employees who, while in the actual discharge of
their duties in interstate commerce, are injured." (pp. 14, 15.)

The difficulty of stating the precise meaning of the term
"scope of employment" was recognized in *Kemp v. Railway
Co.*, 91 Kan. 477, 138 Pac. 621, and it was said that "the act
must not only be done in the time, but in the pursuance of the
objects of the employment, in furtherance of duty." (p.
481.) Various phases of the term are determined in the fol-
lowing decisions, and cases therein cited: *Martin v. Railway
Co.*, 93 Kan. 681, 145 Pac. 849; *Sipult v. Land and Grain Co.*,
94 Kan. 224, 146 Pac. 329; *Sedlock v. Mining Co.*, 98 Kan.
680, 159 Pac. 9. We have never gone to the extent of holding
that an employee while preparing to start but before starting
to work or to report for duty, was within this or synonymous
terms. (See *K. P. Rly. Co. v. Salmon, Adm'x*, 11 Kan. 83.)

The supreme court in *Second Employers' Liability Cases*,
223 U. S. 1, the circuit court in the Lamphere case, and this
court in the Thornbro case referred to the test that the in-
jury must at least have had the effect or tendency to hinder
or delay the movement of a train engaged in interstate com-
merce. A switchman who helped make up the train testified:
"We got it ready to go out at 8:15." The yardmaster ran the
train back to Wichita, but there is nothing indicating any de-
lay caused by plaintiff's injury.

The plaintiff being required to report for duty thirty min-
utes before the time his train was to start and his time to be-
gin, it is difficult to see how it can be accurately said that
while dressing and getting breakfast and before the begin-
ning of the thirty minutes time which, according to his testi-

mony, was to mark the beginning of his actual duties, he was performing any duty for the company or engaged in interstate commerce. The time preceding the beginning of his actual duties was his own and for his use in any way he chose. The collision occurred not while he was momentarily or temporarily diverted from the duties of his employment, but before the performance of such duties had begun. It must be held, therefore, that he was not within the terms of the act.

The judgment is reversed with directions to render judgment for the defendant.