## JOHN T. SMITH v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

November 2, 1923.

No. 23,601.

**Brakeman off duty in caboose of his train not employed in interstate commerce.**

A head brakeman on a freight train hauling interstate commerce, whose run was from Oshkosh to Milwaukee and return, having a number of hours off duty at the latter place and using the caboose on his train as an abode during that time, was injured while so occupying the caboose, by a sudden jolt caused in coupling on the first two cars by the switching crew while making up the train more than an hour before time for its departure for Oshkosh. *Held* not employed in interstate commerce at the time of his alleged injury.

Action in the district court for Renville county to recover $50,000 for personal injuries. The case was tried before Daly, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict in favor of defendant. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*Tom Davis, Ernest A. Michel* and *R. M. Haines*, for appellant.
*F. W. Root, C. O. Newcomb* and *A. C. Erdall*, for respondent.

QUINN, J.

Action to recover for personal injuries which the plaintiff claims to have sustained while in the employ of the defendant, as a head brakeman on one of its freight trains in the state of Wisconsin. There was a verdict in favor of defendant. From an order denying his motion for a new trial, plaintiff appealed. This action was brought under the Federal Employers Liability Act. Plaintiff bases his motion for a new trial on the ground that the trial court erred in holding that he was not engaged in interstate commerce at the time of his injury, and in failing to submit the case to the

[1]Reported in 195 N. W. 534.

jury under the Federal act upon the question of comparative negligence.

Plaintiff was a married man 35 years of age and resided with his family at Oshkosh, Wisconsin. He was in the defendant's employ as a head brakeman on its freight train No. 67, running between Oshkosh and Milwaukee. It was plaintiff's custom to make the caboose of the train upon which he was working his headquarters and resting place between trains while in Milwaukee. The train was made up by the switching crew in the Canal Yards in Milwaukee. The foreman of that crew kept a book showing the time when the make-up of each train was completed. He testified that the train in question was all made up at 10:30 p. m. and that it required from one to two hours to make up such a train. It is conceded that there were three interstate commerce cars in this train. There is no controversy over the facts leading up to the time of the alleged injury to plaintiff. He was at home in Oshkosh over Sunday. On the following day, Monday, April 24, 1923, he went to Milwaukee on a passenger train, arriving there at 8 o'clock p. m. Upon his arrival he called up the chief call boy and informed him that he would be ready to take his run out on train No. 67 for Oshkosh that evening. The call boy told him that the train would leave at 11 o'clock. As stated in his brief, plaintiff went to the caboose at about 9:30 p. m. He then lighted a lamp in the caboose, started a fire in the stove as it was cold and damp, changed his clothes and was in the act of lighting his lantern when the caboose was bumped and plaintiff was thrown backward to the floor, hitting his head and causing a lump thereon about the size of a hickory nut. The plaintiff was alone in the caboose at the time. He testified that the jolt came when the first two or three cars were coupled to the caboose in making up the train. The train consisted of about 35 cars and there was a tag on the side of each showing its destination.

The witness Kisserow was the rear brakeman. He arrived at the caboose shortly after 10 o'clock. It was his duty to clean and fill the lamps and lanterns, put the signal lights in place and the caboose in order. When Kisserow arrived plaintiff told him about the jolt and his fall, but said nothing to the conductor and did not notify

the company for 42 days thereafter. Under the rules of the company then in force, a brakeman's pay did not begin until the schedule time for the departure of his train. After the train was made up and about ready to pull out, the plaintiff took his lantern from the caboose and started along the train, observing the hand brakes and the tags on the cars indicating where each was to be set out as the train proceeded along its journey.

The theory of the plaintiff is that the case comes within the Federal Employers Liability Act and that it was error to charge the jury that, if it found from the evidence plaintiff was guilty of contributory negligence, that fact of itself would be a complete defense to his right of recovery. Upon the other hand, defendant urged that, while plaintiff had a right to go to the caboose for the purpose of resting at such times, yet, in so doing before the train was made up and more than an hour before the schedule time for its departure, he did so as a mere licensee, for his own comfort and convenience, and was not within the scope of his employment nor in discharge of any duty which he owed to his employer, and therefore he was not, at the time of his alleged fall, engaged in interstate commerce.

It is conceded that plaintiff occupied the caboose as headquarters and as a resting place while in Milwaukee between runs. He could as well have been at a hotel. He arrived from Oshkosh at about 8 o'clock and immediately notified the call boy that he would be on hand to take his run out on train No. 67. This was about three hours before time for the departure of his train. His going to the caboose when he did and there doing what he claims to have done, was not within the scope of his duty nor a performance of any duty which he owed to the company in the course of his employment, but rather as a licensee in pursuit of his personal accommodation. His train was not made up. It was a dark, damp, cold night. He did the most natural thing for his own comfort, under the circumstances —lighted a lamp, started a fire, changed his clothes and was in the act of lighting his lantern when the jolt came. These acts, under such circumstances, cannot be held to be the duties of a head brakeman. It required from one to two hours for the switching crew to

make up the train.   The jolt came from the first act of coupling cars onto the caboose in making up the train.   It follows that plaintiff was not engaged in interstate commerce at the time in question. Pryor v. Bishop, 234 Fed. 9, 148 C. C. A. 25; Bishop v. Delano, (C. C. A.) 265 Fed. 263; Bumstead v. Mo. Pac. Ry. Co. 99 Kan. 589, 162 Pac. 347, L. R. A. 1917E, 734.

The facts in Davis v. Chicago, R. I. & Pac. Ry. Co. 134 Minn. 49, 158 N. W. 911, cited by appellant, are so at variance with the facts in the instant case that it has no application here.   In that case the plaintiff was a rear brakeman on a freight train which contained interstate cars.   The train arrived at the end of its run at 10:30 a. m. on the day in question.   It was the duty of the rear brakeman, at the end of his run, to take in the markers, clean and fill 8 lamps and lanterns, sweep the caboose, register in, and procure a supply of kerosene from the storehouse.   When the caboose was set in on the proper track, plaintiff took the markers in, procured the kerosene and then sat down in the caboose and fell asleep.   When he awoke it was 2:30 p. m.   He completed his work and started through the yards over the usual route between two tracks when he was hit by a locomotive and his foot crushed.   It is a general rule that an employe, in going to or from his place of work over the usual route upon the premises of his employer, is deemed to be engaged in the employment.   Ewald v. Chicago & N. W. Ry. Co. 70 Wis. 420, 36 N. W. 12, 5 Am. St. 178.   But, while occupying a caboose at a time when, under his contract of employment, he is neither under the control of his employer nor in duty bound to perform any service for it, but is engaged in matters personal to himself, the rule must be held to be otherwise.   Under such conditions, it is immaterial whether plaintiff was in the caboose or elsewhere, insofar as the applicability of the rule of comparative negligence is concerned.

Affirmed.