# MATH HELBACK v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

March 6, 1914.

Nos. 18,531—(304).

**Wilful negligence — evidence.**

Plaintiff, finding a freight train obstructing the street along which he was walking, attempted to climb through the train between the cars and was injured. He conceded negligence on his own part, but contended that the engineer wilfully and wantonly inflicted the injury by backing the train after having actual knowledge that he was climbing between the cars. *Held* that the evidence is not sufficient to sustain a finding that the engineer knew that plaintiff was in a place of danger.

[1] Reported in 145 N. W. 799.

Note.—As to contributory negligence in attempting to cross a train standing on a crossing, see notes in 13 L.R.A.(N.S.) 1066 and 34 L.R.A.(N.S.) 466. And upon the liability of a railroad company for act of employee in inviting pedestrian to cross train obstructing highway, see notes in 13 L.R.A.(N.S.) 1071 and 34 L.R.A.(N.S.) 469.

Action in the district court for Becker county to recover $2,475 for personal injury. The answer alleged that plaintiff's injury was caused by his own negligence. The facts are stated in the opinion. The case was tried before Nye, J., who denied defendant's motion for a directed verdict, and a jury which returned a verdict for $2,400 in favor of plaintiff. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed and judgment ordered in favor of defendant.

*C. W. Bunn, George Hoke* and *D. F. Lyons,* for appellant.

*M. J. Daly,* for respondent.

TAYLOR, C.

A verdict was rendered against defendant for damages on account of personal injuries sustained by plaintiff, and defendant appealed from an order denying its alternative motion for judgment notwithstanding the verdict or for a new trial.

Seventh street, one of the principal thoroughfares of the village of Perham, is crossed at a right angle by the railway of defendant. Plaintiff, a young man in his twenty-second year at the time of the accident, was employed in a building on the southerly side of the railway, but resided upon the northerly side thereof. At the noon hour he left his place of employment and proceeded northward along the westerly side of Seventh street on his way to dinner. Before he reached the railway tracks a freight train, coming from the west, pulled across Seventh street and stopped, thereby blocking the crossing. Gates were provided to protect the crossing while trains were passing through, and these gates were closed. After waiting for four or five minutes, he passed through the gates and started to climb across the train between the cars. While he was doing so the train backed up and crushed his foot so that it was necessary to amputate the front portion of it. He brought this action to recover damages.

It is clear that plaintiff, in attempting to climb between the cars at the time and in the manner that he did, was guilty of contributory negligence, and this is conceded. He bases his claim to recover solely upon the contention that the engineer was guilty of what is usually termed wilful and wanton negligence. One who knows that another

is in a place of danger and fails to exercise ordinary care to avoid injury to him is liable in damages, although the other is in the position of peril by reason of his own negligence. But to charge a person with liability under such circumstances, it must appear that he had actual knowledge of the peril; and showing merely that he could have discovered it, had he been alert and watchful, is not sufficient. He is not required to keep a lookout for trespassers, nor for those who wrongfully take foolhardy risks. In the present case the only question for determination is whether the evidence justifies a finding that the engineer knew that plaintiff was attempting to pass between the cars, and with that knowledge backed up the train without affording him a reasonable opportunity to save himself from injury.

The train consisted of 51 cars and the conductor and brakemen were in the caboose at the rear eating their lunch. The conductor had directed the engineer to run through Perham without stopping, and to sidetrack at a station 11 miles further on, to permit a passenger train to pass. As they approached Perham the conductor discovered a hot-box upon one of the cars, and, in order to fix it, "pulled the air" and stopped the train. Having stopped, it was necessary to side-track for the passenger which was following them. The engine had run some distance beyond the switch and it was necessary to back up. The engineer gave three short blasts of the whistle, the usual signal to back up, and then looked back toward the rear for the answering signal, in case it should be given from the southerly side of the train. The fireman watched for it from the other or northerly side. Under the operating rules, the engineer could not back the train until he had received this signal. The rear brakeman alighted from the caboose on the southerly side, and the conductor and head brakeman on the northerly side. The conductor gave the answering signal to back up, which was reported to the engineer by the fireman. The engineer turned to his levers, reversed the engine, and began the backward movement. He testified that he did not see the plaintiff and did not know that he was attempting to pass between the cars.

Plaintiff and several other persons were waiting for the train to move off the crossing. Plaintiff went up to the train, looked west

toward the depot, and then east toward the engine. He states that he saw the engineer looking at him, and thereupon took hold of the ladder at the side of the car and got upon the coupling between the cars. The cars began to move and caught his foot. His statement that the engineer was looking at him is clearly his conclusion drawn from the fact that the engineer was looking out of the cab-window toward the rear. The distance between them is in dispute. The conductor testified that the car on which plaintiff was injured was the fifteenth from the engine as shown by the train sheet offered in evidence. Plaintiff did not know how many cars were between him and the engine, but, at a guess, placed the number at four or five. Other portions of his testimony indicate that the distance was, perhaps, greater than this estimate. The exact distance is not important; it was at least 200 feet. While plaintiff was near enough to see that the engineer was facing him, it is clear that he was not near enough to see the engineer's eyes with such distinctness as to be able to identify the object at which he was gazing. Plaintiff estimates that the injury happened from two to six seconds after he started to pass between the cars. At first he stated, "I presume it did not take me more than two seconds to get in between there." Subsequently he extended this period to five or six seconds. The length of time which would necessarily elapse after the engineer had started to reverse his engine and before the reverse motion could be imparted by the engine to the car upon which plaintiff was injured, as shown by the only evidence upon the question, would be at least 20 seconds. This would indicate that the engineer turned to his levers and initiated the reverse movement before plaintiff started to go between the cars. Plaintiff looked at the engineer only once. He did not look after taking hold of the ladder, and does not say that the engineer looked at him while he was in the act of climbing upon the car. In Wherry v. Duluth, M. & N. Ry. Co. 64 Minn. 415, 67 N. W. 223, the plaintiff, Wherry, testified that before starting to go upon the cars he saw the engineer looking back at him out of the cab-window. He then attempted to climb through between the cars and was injured in much the same manner that plaintiff in the instant case was injured. The evidence failed to show that the engineer

was looking at the time Wherry started to climb upon the car, and the court held that it was not sufficient to sustain a finding that the engineer saw him while he was doing so.   The present case is within the rule there stated.

Common experience teaches that men seldom, knowingly and wantonly, do an act likely to inflict injury upon another.   The engineer had no reason to anticipate that plaintiff would take the risk of attempting to pass through a train upon the main track with the gates guarding the crossing closed; and was not required to watch for such attempts.   In order to establish the charge that he backed the train in wilful and reckless disregard of the danger to plaintiff, it must be shown with reasonable certainty that he had knowledge of plaintiff's perilous situation.   The evidence is not sufficient to sustain a finding that the engineer had such knowledge, and the order appealed from is reversed and judgment directed for defendant.