# G. F. WESTCOTT v. CHICAGO GREAT WESTERN RAILROAD COMPANY.[1]

December 14, 1923.

No. 23,543.

**Employer guilty of negligence if it moved cars in yard without warning to workmen on way to and from work.**

1. There was evidence to show that it was the general practice of the employes of a railroad company to cross its yard to go to their place of work and, when they found the way obstructed by cars, to climb over the couplings, and that the company had notice of the practice. *Held* that a jury might properly find that it was the company's duty to use ordinary care to avoid injuring employes in such a position and that it would be guilty of actionable negligence if it moved such cars without warning at a time when its employes were crossing the yard to go to or return from their place of work.

**Assumption of risk and contributory negligence.**

2. The defenses of contributory negligence and assumption of risk are separate and distinct. The first involves the notion of carelessness, while the second does not. The facts may make a case where both defenses are available. Assumption of risk may be a defense, although there was no contractual relation between the parties. The nature of the act rather than the actor's relation to the defendant is the proper test for determining whether one defense or the other is appropriate.

**Presumption of due care—directed verdict not proper.**

3. Respondent was entitled to the benefit of the presumption that the decedent exercised due care for his own safety while crossing appellant's yard to go to his place of work. Whether decedent knew or should have known that the cars on a passing track were in a live train, or that switching operations were going one, was a question for the jury, and appellant was not entitled to a directed verdict on the ground that decedent assumed the risk incident to his going between the cars which blocked his way.

[1]Reported in 196 N. W. 272.

**Employe going to work within Federal act.**

> 4. A railroad pumpman, employed in interstate commerce, when on his employer's premises going to his place of work, with no other purpose in view, and when the time to begin work was closely approaching, was performing a required duty which was a necessary incident of his employment and was within the purview of the Federal Employers Liability Act.

Action in the district court for Mower county by the administrator of the estate of John D. Derby, deceased, to recover $35,000 for the death of his intestate. The answer alleged assumption of risk on the part of plaintiff and reckless acts and omissions on his part. The case was tried before Meighen, J., who when plaintiff rested and at the close of the evidence denied defendant's motion for a directed verdict, and a jury which returned a verdict for $9,000. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Briggs, Weyl & Briggs* and *Catherwood & Nicholsen*, for appellant.
*F. G. Sasse* and *R. A. Dunnette*, for respondent.

LEES, C.

Action for damages for the death of John D. Derby, alleged to have been caused by the defendant's negligence. Plaintiff recovered a verdict and defendant appealed from a denial of its motion in the alternative for judgment or a new trial.

The accident happened in appellant's railroad yard at Hayfield in this state. Derby was on his way to the roundhouse on the west side of the yard, where he operated the pump by which the water tank was filled. He lived east of the yard and near Grove street. This street ended at the east side of the yard and nearly opposite the roundhouse. Many of appellant's employes came to and went from the roundhouse by way of this street, crossing on their way the main line track, a passing track and numerous side tracks. They had done so for such a length of time and so constantly and openly that a jury might well find that appellant knew of it and consented to it. About 95 rods north of Grove street appellant's right of way is intersected by Broad street, where the depot is located. No street

or road leads from Broad street to the roundhouse and no other street is laid out across the right of way. It seems that Broad street was never used by the roundhouse crews in going to their place of work. The men worked in shifts. Derby worked daily from 4 p. m. until midnight. On November 15, 1921, he left home at about 3:55 p. m. to go to work. Two of appellant's employes, who were on their way home, met him on Grove street about 50 feet east of the right of way. An extra freight train from the south had arrived at Hayfield at 2:30 that afternoon. The caboose and a flat car were cut off and left on the passing track some distance south of Grove street. The remainder of the train stopped farther north. At about 4 o'clock the trainmen were switching cars to make up the train which was to go on to St. Paul. One or more "flying switches" were made, no warning signals being given. When the two men who met Derby reached the passing track, they were confronted by a string of cars extending about seven carlengths north of Grove street. They walked around them to get to the street. A shallow cut begins opposite the west end of the street and continues to the north, gradually becoming deeper. Willows and weeds growing along the right of way interfered with the view of cars in the deeper portion of the cut when one approached from the east. Between the street and the depot the passing track curves to the west. The afternoon was damp and there was some fog. A jury might infer that, owing to these conditions, Derby did not know that the cars on the passing track were part of a train which was being made up, and, in the belief that the cars were "dead" attempted to climb over or between them; that, while he was doing this, without warning a flying switch was made and the cars standing on the passing track were struck with unusual violence, and, as a result, he was thrown under the wheels and killed. Blood stains on the west rail opposite the end of Grove street, on the rear west wheels of the twentieth car from the south end of the string and on the snow between the rails, indicated that Derby was run over while he was between two cars standing in line with Grove street.

1. Appellant's first contention is that there was no evidence to warrant a finding of negligence. Derby was not a trespasser. Ap-

pellant permitted its employes to cross the yard to go to the round-house. No. other way was provided. It was, therefore, the duty of the appellant to exercise reasonable care to prevent the injury of employes crossing the yard by their usual route. Sinderson v. Payne, 151 Minn. 142, 186 N. W. 237. There was evidence showing it to have been the custom of appellant's employes, when the way to the roundhouse was blocked, to climb over the coupling between two cars. Notice of the custom is imputable to appellant. It was its duty to use ordinary care to protect employes from injury. Therefore it might be a negligent act to move without warning cars which blocked their way at the hour when the roundhouse shifts came and went. We are of the opinion that the evidence, although meager, would warrant the jury in finding that the train-men, disregarding a duty owed by appellant to its employes, "kicked" a number of cars against those standing on the passing track with-out any warning, and that, as a result, Derby was fatally injured.

2. Appellant interposed as defenses contributory negligence and assumption of risk. Under both Federal and state employers lia-bility acts, assumption of risk is a good defense, unless a violation of a statute enacted for the safety of employes contributed to the injury or death. On the other hand, contributory negligence is not a complete defense. If proved, it diminishes the damages recover-able. Before these statutes were enacted, it was not always neces-sary to distinguish one defense from the other, but now precision on this point is important, for an employe may be denied a recovery if contributory negligence on his part is mistaken for assumption of risk, or the employer may be deprived of a good defense if the volun-tary assumption of a known risk is mistaken for contributory negli-gence.

This court has said that the two defenses are separate and dis-tinct; that contributory negligence is a breach of the duty to take care, and that assumption of risk is based on the principle expressed by the maxim volenti non fit injuria and not on an implied agree-ment that the servant will take upon himself the risk of injury from such dangers as are incident to the employment, as is held by some courts, Rase v. Minneapolis, St. P. & S. S. M. Ry. Co. 107 Minn. 260,

120 N. W. 360, annotated in 21 L. R. A. (N. S.) 138; and that contributory negligence involves the notion of carelessness, while assumption of risk may be free from any suggestion of negligence, Casey v. Illinois Cent. R. Co. 134 Minn. 109, 158 N. W. 812, citing Seaboard Air Line v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. ed. 1062, L. R. A. 1915C, 1 Ann. Cas. 1915B 475. Manifestly negligence does not necessarily attend an act by which a man voluntarily exposes himself to a known danger. One who decides that the chance of escaping injury is such that he will take it and then proceeds with due care, can hardly be said to be negligent. Carelessness is not the same thing as deliberate choice. A dangerous act may be done carefully or carelessly. No matter how it is done, the defense of assumption of risk may be appropriate and sometimes the same state of facts will also support the defense of contributory negligence.

Much difficulty has been experienced in determining whether the one defense or the other, or both, may be interposed under the particular facts of a case. It has been said of assumption of risk that it shades into negligence as commonly understood, Schlemmer v. Buffalo R. & P. Ry. Co. 205 U. S. 1, 27 Sup. Ct. 407, 51 L. ed. 681; that the two defenses in practical operation often approach each other very closely and sometimes may be invoked on the same state of facts, St. Louis Cordage Co. v. Miller, 61 C. C. A. 477, 126 Fed. 495, 63 L. R. A. 551; that the two concepts seem to overlap, but that assumption of risk involves the notion that the master is absolved from negligence by the consent of the servant who works with defective appliances, with notice of the defect and appreciation of the danger, Maloney v. Cunard S. S. Co. 217 N. Y. 278, 111 N. E. 835; that they have so much in common that they are habitually confused, but that assumption of risk is broader than contributory negligence. 1 Street, Foundations of Legal Liability, 150. For an interesting exposition of the subject with reference to the Federal Act see 28 Harv. Law Rev. 163.

In Wherry v. Duluth, M. & N. Ry. Co. 64 Minn. 415, 67 N. W. 223, followed in Sikorski v. Great Northern Ry. Co. 127 Minn. 110, 149 N. W. 5, the act of a pedestrian who climbed between two cars when

he found a street obstructed by a train was considered to be contributory negligence. Nowhere in the discussion did the court suggest that such an act might bring the plaintiff within the application of the doctrine of assumed risks. In those cases there was no contractual relation between the plaintiff and the railway company, while here there was such a relation. But assumption of risk may be asserted as a defense, although the parties to the action were strangers, for it is a well recognized principle of the law of torts that one man cannot charge another with liability for an injury to his person or property resulting from a danger which was visible, apparent and voluntarily encountered by the injured person. Thomas v. Quartermaine, L. R. 18 Q. B. Div. 685; Miner v. Conn. River R. Co. 153 Mass. 398, 26 N. E. 994; Fitzgerald v. Conn. River Paper Co. 155 Mass. 155, 29 N. E. 464, 31 Am. St. 537; Indiana N. G. & Oil Co. v. O'Brien, 160 Ind. 266, 65 N. E. 918, 66 N. E. 742; 1 Shear. & Red. on Neg. § 114b; 3 Labatt, Mast. & Ser. § 1285; Pollock, Torts, 166.

It would seem that Derby's act, like the acts of Wherry and Sikorski in the cases cited, is properly characterized as negligent. Do facts which are ground for the defense of contributory negligence as against a stranger become a basis for the defense of assumption of risk if the injured person happens to be an employe of the defendant? It seems to us that the nature of the act and not the actor's relation to the defendant should be the test for determining whether the proper defense is contributory negligence or assumption of risk, or both. Such a test may lack definiteness and certainty, but it is impossible to draw a line accurately separating one defense from the other. Cases will arise which come so near the line that it will be hard to determine on which side of it they fall. It has been said that just what is necessary to constitute an assumption of a risk by the person injured which will relieve the other party of responsibility can be truly said to constitute the great unsolved problem of the law of negligence. 1 Street, Foundations of Legal Liability, 150.

In the instant case the court denied appellant's motion for a directed verdict and submitted both defenses to the jury. They

were instructed in substance that if Derby knew or, in the exercise of reasonable care, should have known that the cars were apt to be set in motion, he assumed the risk of climbing over the drawbars and his act would also amount to contributory negligence; that, if he assumed the risk, there could be no recovery and, if he did not but was guilty of contributory negligence, the amount of the recovery should be reduced. On this appeal these instructions are not questioned. Appellant takes the stand that its motion for a directed verdict should have been granted because the defense of assumption of risk was clearly established. We have reached the conclusion that it was for the jury to say whether it was established. Respondent is entitled to the benefit of the presumption that Derby exercised due care for his own safety. If he knew the cars were in a train which was being made up, it is possible that assumption of risk might be interposed as a defense, but there was no proof which would conclusively charge him with notice of the facts in that regard. It was suggested in the argument that he should have ascertained the true situation before he went between the cars. Grant that he should have done so but failed, what would that be but contributory negligence? The jury had a right to presume that Derby did not recklessly expose himself to imminent danger; that when he started to climb between the cars he acted in the justifiable belief that they were not about to be moved, and neither knew nor had cause to know that he was exposing himself to serious danger.

In the Wherry case plaintiff knew that the street was obstructed by cars to which an engine was attached. He must have known that the train might be moved at any moment. He waited a few minutes, expecting it to start, and then, becoming impatient, attempted to climb up between two cars. In the Sikorski case, plaintiff failed in his effort to show justification for a belief that the crossing was not blocked by a live train. The cars were on the main line where cars were not left standing without engines. He became weary of waiting and took the chance of climbing over the coupling between two cars. In Helback v. Northern Pac. Ry. Co. 125 Minn. 155, 145 N. W. 799, plaintiff knew that the crossing was

blocked by a live train. In each of these cases, the cars were obstructing a street crossing. Everyone knows that it is lawful to block such a crossing for only a short time. Here, the cars were on a passing track in a railroad yard. They had been there for at least one and one-half hours. They might be left there indefinitely and no statute would be violated. As a matter of law it cannot be held that Derby knew or should have known that the cars were in a live train or that they would be moved in switching operations.

The negligence of a railway employe may be a complete defense, notwithstanding the provisions of the liability acts, for in any case it is essential to a recovery that the company's negligence be established. But if the injury complained of was caused solely by the negligent act of the employe, the company being blameless, there can of course be no recovery. Thornhill v. Davis (S. C.) 113 S. E. 370, 24 A. L. R. 617. For the reasons already stated, this is not such a case.

3. Appellant contends that the fatal injury was not inflicted while Derby was employed in interstate commerce, and hence there can be no recovery under the Federal Employers Liability Act upon which this action was based. Derby was crossing his employer's yard to reach his place of work. He had no other purpose in view. The time to begin work was closely approaching. He was performing a required duty which was a necessary incident of his employment, and it would be too narrow a construction of the liability act to hold that he was not then employed in interstate commerce. Davis v. Chicago, R. I. & Pac. Ry. Co. 134 Minn. 49, 158 N. W. 911; Stavros v. Chicago, M. & St. P. Ry. Co. 151 Minn. 251, 186 N. W. 942, 24 A. L. R. 630; Erie R. Co. v. Winfield, 244 U. S. 170, 37 Sup. Ct. 556, 61 L. ed. 1057, Ann. Cas. 1918B, 662; Atl. Coast Line R. Co. v. Williams, 284 Fed. 262: Philadelphia, B. & W. R. Co. v. Tucker, 35 App. D. C. 123, L. R. A. 1915C, 39; Knowles v. New York, N. H. & H. R. Co. 223 N. Y. 513, 119 N. E. 1023.

Order affirmed.